MOSES LAPRAD, ADMINISTRATOR, ET AL. v. EDWARD T. SHERWOOD ET AL.

*Equity practice— Disclaimer — Mortgages— Fraud— Forgery—Bona fide purchaser.*

1. No one can disclaim so as to avoid responsibility for wrong-doing.

2. A mortgagee cannot certify to the acknowledgment of the mortgage. *Groesbeck v. Seeley*, 13 Mich. 329.

3. Mortgages forged or obtained by trickery, without negligence, cannot become good in any one's hands.[1] *Burson v. Huntington*, 21 Mich. 415; *Gibbs v. Linabury*, 22 Id. 479; *Anderson v. Walter*, 34 Id. 113; *Soper v. Peck*, 51 Id. 563; *Bank v. Deal*, 55 Id. 592.

4. There is no such thing as a *bona fide* purchaser without a vendor, and a transfer from that vendor for the consideration paid.

5. Assignments of mortgages by trustees are at most only nominal, and no assignment is necessary of a note payable to bearer.

Appeal from Monroe. (Kinne, J.) Argued January 29, 1890. Decided February 20, 1890.

———

[1] See *McGinn v. Tobey*, 62 Mich. 252.

Bill to set aside two alleged mortgages, etc. Complainants appeal. Reversed, and relief granted as prayed. The facts are stated in the opinion.

*G. Morris*, for complainant, cited no authorities.

*Otis A. Critchett*, for defendants.

*Ira R. Grosvenor*, for defendants, contended:

1. The bill contains no imputation or allegation of fraud as to the defendant Green, and states no case entitling complainant to relief against her, and should be dismissed, as to her, with costs; citing *Cicotte v. Gagnier*, 2 Mich. 389.

2. A note and mortgage, void for fraud or want of consideration, are valid in the hands of a *bona fide* holder without notice; citing 1 Dan. Neg. Inst. §§ 834 (*a*, *b*), 836, 837.

3. The defendant Green, having received these securities before due, in the usual course of business, and in payment of a pre-existing debt, without notice of fraud, is a *bona fide* holder and purchaser, and is protected against any equities between the original parties to the papers; citing 1 Dan. Neg. Inst. §§ 184 (note), 780 (and cases cited in note).

4. Notes payable to the payee or bearer, when indorsed or transferred, draw the security; citing 1 Jones, Mort. § 834.

5. The assignee of a mortgage given to secure a negotiable promissory note before due, who receives it in good faith, either for cash or a precedent debt, is a *bona fide* holder, and is not chargeable with the equities or frauds that may exist between the original parties to the note and mortgage; citing *Cicotte v. Gagnier*, 2 Mich. 381; *Dutton v. Ives*, 5 Id. 515; *Outhwite v. Porter*, 13 Id. 533; *Terry v. Tuttle*, 24 Id. 213; *Helmer v. Krolick*, 36 Id. 373.

CAMPBELL, J. This suit in chancery was brought to get rid of two alleged mortgages standing of record as made by Henry Baumgarten, but which are claimed to have been obtained by some fraudulent method, and to be void. One was for $1,650, alleged to have been obtained by a Bohemian oat swindle, and by false statements and deceit. The other was for $500, and attacked as without any basis whatever. The first was made in form to defendant

Emeline McCarn. The second was in the name of defend-
ant Mary L. Moore. Both were residents of another
state. Each mortgage was made to secure a promissory
note for the amount called for in it, payable, respectively,
to Emeline McCarn or bearer, and to Mary L. Moore or
bearer,—one 8 years, and one 10 years, after date,—with
annual interest at 10 per cent. Both were in form
assigned to defendant Green by the mortgagees directly.
Defendant Sherwood is the person who claims to have
procured them, and who either procured or fabricated
them.

Defendants McCarn and Moore put in the same answer,
to the effect that Sherwood never had any interest in
either of the mortgages, but that they were both taken
for the use and benefit of defendant Elizabeth Green, and
put in their names for her because she was a minor, and
that they were assigned to her by them when she came
of age, at her request.

Defendant Green denies that the mortgages were pro-
cured by Sherwood for his own benefit, or that he ever
owned them, but claims each was given for its face,
actually paid in money to Baumgarten, and assigned to
her for value, in good faith.

Sherwood answered that both mortgages were given for
the sums named, actually received by Baumgarten, denied
all the fraud alleged, and alleged their full consideration,
averred Miss Green to be their *bona fide* holder for value,
and declared that—

"He never had, nor pretended to have, nor has he
now, any right, title, or interest of, in, or to the said
notes and mortgages, or either of them, or in the money
due, or to become due, thereon, or secured thereby, or to
the said mortgaged premises, or any part thereof, or to
the equity of redemption of the same, or any part thereof;
and he disclaims all right and title of, in, and to the
same, and every part thereof."

The bill charged Sherwood with procuring them by fraud, and for his own benefit, and the transfers to be for fraudulent purposes. The combined answer and disclaimer was not verified, but was allowed to be verified after Sherwood had been dismissed.

Demand having been made for hearing in open court, the circuit judge, assuming to act under the act of 1887, which has been held invalid since the hearing of the testimony (*Brown v. Circuit Judge,* 75 Mich. 274), presented three single issues to the jury for determination, and no more. They found that both mortgages were procured by fraud,—that one was without any consideration, and the other for an illegal consideration (Bohemian oats),—but with no further details. They were not called on to determine what the consideration was in fact, or how Miss Green became possessed of them. Sherwood was dismissed from the case before defendants introduced any testimony, and before his disclaimer was verified. He was so dismissed to avoid his disability as a party to testify to what was within Baumgarten's knowledge. Finally, the court, while approving the finding of the jury, held Miss Green to be a *bona fide* holder, and dismissed the bill. The opinion directed the dismissal to be with costs to complainants against Sherwood; but, for some unexplained reason, the decree dismisses the bill, and is silent entirely about costs.

The course taken below led to the exclusion of much testimony which, under the proper practice, the courts should, and probably would, have admitted. It also allowed Sherwood an opportunity of swearing to facts which no one was alive to dispute, and which, as a party defendant, he could not have sworn to. The whole case made by the bill rested on allegations of wrong-doing in which he was the active party, and for which he was undoubtedly liable. If the mortgages should be held good

because he has so manipulated them as to get them into hands where they would be valid, he could not escape the consequences of his wrong, and should be compelled to make it good. No one can disclaim so as to avoid responsibility for wrong-doing.

A further difficulty, also, was created by the adhesion to the statute. From the nature of the case, complainants were somewhat in the dark as to the full facts, and had no means of examining the papers until produced. On their production, it was claimed, and with apparent reason, that the documents were fabricated, and leave was asked to amend so as to charge their forgery. If forged, no one could get title under them. There can be no doubt this leave ought to have been granted, as we suppose it would have been, if the court had not assumed to act under the law of 1887.

The final claim made on behalf of Miss Green rested, in part or entirely, on the idea that she took the mortgages on a settlement with Sherwood. She dealt with no one else. If this were so, and if he was owner or pretended owner, of them before the settlement, it put him in the position of certifying to the acknowledgment of a mortgage of his own, which was held in *Groesbeck v. Seeley*, 13 Mich. 329, to be illegal. In that case the deed was upheld because made to a third person, who took an absolute title by the notary's procurement, and so not creating any trust in favor of the notary. But trusts in personalty can be created by parol, and the notes in this case were payable to bearer. So that, if Sherwood got them up for his own purposes, he was the bearer, and he could not give them validity by his certificate.

We should be compelled, by reason of these considerations, to send the case back for rectification and hearing in the usual way, if the record as it stands can uphold the decree; but we do not think it can. Sherwood's tes-

timony is so manifestly unreliable as to be worthy of no credit whatever, and received none from the jury. He claims that the mortgages were both given for cash advanced or due, and for nothing else, beyond a trifling amount. The circumstances are such as to negative any such idea. He denies the Bohemian oats business as making up the consideration. Complainants gave very strong circumstantial evidence that the whole thing was fictitious. It certainly, in our judgment, was not as defendants claim. Whatever may have been the oat dealings, they were not such as to account for any such mortgages. Whether forged out and out, or procured by some legerdemain amounting to about the same thing, they are equally invalid. If forged or obtained by trickery, without negligence, they could not become good in any one's hands. *Burson v. Huntington*, 21 Mich. 415; *Gibbs v. Linabury*, 22 Id. 479; *Anderson v. Walter*, 34 Id. 113; *Soper v. Peck*, 51 Id. 563 (17 N. W. Rep. 57); *Bank v. Deal*, 55 Id. 592 (22 N. W. Rep. 53).

If Miss Green can be held a *bona fide* holder, it would be necessary to have a further examination into the genuineness of the documents, which the court below would not permit. If, as we hold, Sherwood was a party defendant, who could not be dismissed from the suit, as he sought and was allowed to be dismissed, then there is no legal proof of the notes at all. But there can be no such thing as a *bona fide* purchaser without a vendor, and a transfer from that vendor for the consideration paid. The pleadings distinctly negative any ownership in Sherwood, or in the mortgagees; and, according to the case which they make, Miss Green was the first holder, for her own benefit. The testimony is not at variance with this. If these papers were purchased by Miss Green, it must have been from Sherwood, or from the mortgagees. Not only do the answers claim that none of

them ever had or claimed any interest, but the mortgagees assigned them directly to Miss Green, and placed them—if they ever held them—in Sherwood's hands, for her, without receiving or expecting any payment. They claim to have held them, as bare trustees, for her benefit as a minor. Assignments so made are at most only nominal, and no assignment was necessary, and none was made, of notes payable to bearer. Miss Green's own testimony, which appears to be candid, shows that in receiving these mortgages they were regarded as her own, and she paid the expense of recording and procuring assignments, and Sherwood's alleged traveling and other expenses and commissions, and, beyond this, turned over to Sherwood the receipts which he had given when the money was given him, long before, for investment. He was treated in all this as an agent accounting to his principal.

Furthermore, by the laws of Ohio where Miss Green lived, she became of age at 18, and not at 21, and was of age when these mortgages purported to be dated, and considerably earlier. There was nothing in the way of the relation of agency, or of her dealing with Sherwood, or any one else, in money matters, in Ohio or elsewhere. All the testimony for the defense, in the same line with the pleadings, makes out Sherwood to have been acting in her interest, and not in his own. She could not, on any theory of pleadings or proof, be a purchaser for value.

It is evident that, unless Sherwood really paid Baumgarten the consideration for the mortgages, which we do not believe, he got up these papers by forgery or fraud, to make Baumgarten pay his own fiduciary obligations, by apparently affording Miss Green security for an apparent investment. This was a wicked double fraud; and she has a right to redress against Sherwood, as complainants would have had, if she had obtained a legal right

under the mortgages. But, under the pleadings and record in this case, she must look to him.

The decree should be reversed, and relief granted to complainants as prayed. Costs of both courts must be awarded to them against Sherwood. We are not satisfied the other defendants have meant any wrong, and we are not inclined to order costs against them.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred. LONG, J., did not sit.