SEPPALA *v.* NEAL.

1. AUTOMOBILES—CERTIFICATE OF TITLE—DELIVERY—STATUTES.
   Unless the certificate of title of a motor vehicle is delivered
   as required by statute with assignment of title indorsed by
   the seller, he remains the owner and may be held liable for
   the negligence of the purchaser in the operation of the
   vehicle (1 Comp. Laws 1929, § 4660, as amended by Act No.
   160, Pub. Acts 1935).

2. SAME—CERTIFICATE OF TITLE—DELIVERY—QUESTION FOR JURY—
   EVIDENCE.
   Where testimony on issue as to whether or not defendant
   garage owner, as seller of car to his 20-year-old employee,
   had made delivery of certificate of title pursuant to man-
   date of statute, was such that conflicting inferences might
   reasonably have been drawn therefrom, such question of
   fact was one for the jury, hence it was not error for trial
   court to deny motion for directed verdict and subsequent
   motion for new trial on the ground that the finding of
   the jury for plaintiff was against the great weight of the
   evidence (1 Comp. Laws 1929, § 4660, as amended by Act
   No. 160, Pub. Acts 1935).

3. TRIAL—CLOSING ARGUMENT—INSTRUCTIONS—DELIVERY OF CER-
   TIFICATE OF TITLE.
   Where, during closing argument to jury by plaintiff's counsel,
   defendant's counsel interrupted and stated his view as to
   nature of delivery required of motor vehicle certificate of
   title and asked for instruction upon question of delivery,
   the failure of the trial court to make an instruction im-
   mediately *held,* not error, under the circumstances, in view
   of record presented failing to show the full text of state-

REFERENCES FOR POINTS IN HEADNOTES
[3] 53 Am. Jur., Trial, § 536.
[4] 5 Am. Jur., Automobiles, § 735.
[5] 3 Am. Jur., Appeal and Error, § 1097.

ment made by plaintiff's counsel and conclusion by trial court that defendant's counsel merely desired that such subject be covered in the charge to the jury.

4. AUTOMOBILES—LEFT TURN—ONCOMING VEHICLES—INSTRUCTIONS —EVIDENCE—STATUTES.

In case involving collision between defendant's eastbound car and westbound car in which plaintiff was a guest passenger, as defendant's car was turned to left, where trial court rather closely followed language of section of statute as to duty of operators of cars on the highway first with reference to portion relative to duty to make observations as to whether or not starting, stopping or turning from a direct line can be made in safety and then referred to signal required, later returning to emphasize that "the important part" was that before stopping and turning the operator should see that the movement could be made in safety, and testimony was such as to indicate that defendant was guilty of violating the statute in respect to making observation, the inadvertent reference to signals required for drivers approaching from the rear was not prejudicial error (1 Comp. Laws 1929, § 4711).

5. TRIAL—INSTRUCTIONS CONSIDERED IN ENTIRETY.

Instructions to a jury must be considered in their entirety, rather than by separate sentences or detached propositions.

Appeal from Muskegon; Spier (James E.), J., presiding. Submitted January 14, 1949. (Docket No. 44, Calendar No. 44,232.) Decided February 28, 1949.

Case by Raymond Seppala against Charles Neal, Jr., for injuries suffered in an automobile accident. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Harry D. Reber,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Edward D. Wells,* of counsel), for defendant.

CARR, J.  Plaintiff brought this action in circuit court to recover damages for injuries sustained by him in an automobile accident.  At the time of the occurrence he was a guest passenger in a car driven by Raymond LaCroix, which was proceeding in a westerly direction on the north side of a four-lane highway in Kent county.  At the same time Robert Ryder was driving a car in the opposite direction, and, desiring to stop at a hamburger stand on the north side of the highway, he turned to the left in front of the LaCroix car.  A collision resulted, in which plaintiff was injured.  It was his claim in the trial court that the automobile driven by Ryder was owned by the defendant Neal, and was being driven with the knowledge and consent of the latter.  He further claimed that the proximate cause of the collision was the negligence of Ryder in making the turn without reasonable and proper observations as to oncoming traffic.  Defendant denied ownership of the car, insisting that it had been sold to Ryder approximately 5 days before the accident.  The trial in circuit court was largely concerned with this issue.

At the conclusion of plaintiff's proofs, defendant made a motion for a directed verdict on the ground that the testimony failed to show that Neal was the owner of the car at the time the accident occurred. The trial court denied the motion and submitted the question to the jury, which determined it in favor of the plaintiff.  The questions of negligence involved were also decided in plaintiff's favor, and a verdict returned in the sum of $12,000.  Thereafter defendant moved for a new trial, on the grounds that the court erred in denying the motion for a directed verdict, and that the finding of the jury was against the weight of the evidence.  This motion was denied, and defendant has appealed.

The principal question before us is whether the trial court was in error in submitting to the jury the

question as to defendant's ownership of the car at the time of the accident, which occurred on April 13, 1941. On behalf of defendant it is insisted that there was no dispute in the testimony relating to the matter, and that it was conclusively established on the trial that the defendant had sold the car to Ryder on or about April 8th preceding the accident. Plaintiff directs attention to alleged contradictions and inconsistencies in the testimony, and to the manner in which the alleged sale was handled, insisting that on the record a jury question was presented. The trial judge, as indicated by his opinion denying the motion for a new trial, came to the conclusion that it was his duty to allow the jury to determine the issue, and that there was sufficient evidence to support the finding.

At the time of the transaction in question, defendant Neal was operating a garage, and Robert Ryder, who was a young man 20 years of age, was employed by him. Some negotiations were had between them with reference to the purchase of the car, and an agreement was reached under which payment was to be made therefor by deductions from Ryder's wages. It is undisputed also that defendant had in his possession a certificate of title, delivered to him by the former owner from whom he had purchased the car. At the time of the trial the signature of Ryder appeared in two places on the back of this certificate. He testified, in substance, that on the 8th of April he affixed his signature in one of such places but could not recall which. As we read defendant's testimony, it was apparently his claim that he delivered the title to Ryder at the time of the transaction, that the latter wished to have his mother sign with him because of his nonage, that Ryder retained the certificate for several days, and that he finally returned it to defendant, after the accident, in order that it might be forwarded to the office of the secre-

tary of State for the purpose of obtaining a new certificate in the name of Ryder, or of Ryder and his mother.

Section 4660, 1 Comp. Laws 1929, as amended by Act No. 65, Pub. Acts 1931, and by Act No. 160, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 4660, Stat. Ann. § 9.1474), provides in part as follows:

"In the event of the sale or other transfer after October 1, 1921, of the ownership of a motor vehicle for which a certain certificate of title has been issued as aforesaid, the holder of such certificate shall indorse on the back of same an assignment thereof with warranty of title in the form printed thereon with a statement of all liens or encumbrances on said motor vehicle, sworn to before a notary public or some other person authorized by law to take acknowledgments, and deliver the same to the purchaser or transferee at the time of the delivery to him of such motor vehicle, which shall show the payment or satisfaction of any mortgage or lien as shown on the original title. The purchaser or transferee, unless such person is a dealer licensed under section 14 of this act, shall within 10 days thereafter present such certificate, assigned as aforesaid, to the secretary of State, accompanied by a fee of one dollar, whereupon a new certificate of title shall be issued to the assignee:  *  *  *  Said licensed dealer shall on selling or otherwise disposing of said motor vehicle, execute and deliver to the purchaser thereof an affidavit of conveyance or assignment in such form as the secretary of State shall prescribe, to which shall be attached the assigned certificate of title received by such dealer."

This section was further amended by Act No. 272, Pub. Acts 1945,* but obviously we are not concerned in this case with such amendment. It has been repeatedly held that the provisions of the statute above

---

2 Comp. Laws 1948, § 256.103.—REPORTER.

quoted must be followed in the sale of an automobile, and that, unless the certificate of title is delivered as required, the seller remains the owner, and as such may be held liable for the negligence of the purchaser in the operation of the vehicle. See *Endres* v. *Mara-Rickenbacker Co.*, 243 Mich. 5; *Schomberg* v. *Bayly*, 259 Mich. 135; *Kimber* v. *Eding*, 262 Mich. 670; *Noorthoek* v. *Preferred Automobile Ins. Co.*, 292 Mich. 561. As before noted, defendant in the instant case insists that he followed the provisions of the statute and delivered the certificate of title to Ryder prior to the accident, while plaintiff insists that the testimony was such as to raise an issue of fact which the jury properly determined in his favor.

In view of the conflicting claims of the parties, a consideration of the testimony becomes necessary. Called as a witness for plaintiff, Ryder testified in part as follows:

"I remember taking the certificate of title to my mother's home for her signature. As far as I can remember it was after the accident. I wouldn't swear to it. The title was given to me to take home and have my mother sign as beneficiary by Mr. Neal. As far as I can remember, that is the first time I had possession of the title.

"*Q.* You took it home, then, right after it was given to you by Mr. Neal?

"*A.* I don't know if it was in the same hour, or next day, or what time it was.

"*Q.* Was it within a day or two?

"*A.* I wouldn't swear to that, either.

"*Q.* What is your best judgment?

"*A.* All I know, it was after the accident.

"*Q.* That, you know?

"*A.* Yes.

"*Q.* It was after the accident you got possession of the title and took it home?

"*A.* That is right.

"*Q.* Did Mr. Neal give you that title himself at that time?

"*A.* I don't remember who gave it to me.

"*Q.* Was there any talk between you and Neal about his holding the title until you paid for the car?

"*A.* I done like everybody else—left my title there to have him send it for title transfer, like that, after I bought the car.

"*Q.* Did you do that after your mother signed it?

"*A.* As far as I can remember, the title was made out with my name on it, and I brought it home to have my mother sign as guardian.

"*Q.* That was after the accident?

"*A.* As far as I can remember.  *  *  *

"*Mr. Reber:* Now, did Mr. Neal state to you why he was in such a hurry to have the title transferred after the accident?

"*A.* No, not that I know of.

"The car was a wreck at that time; it was in Grand Rapids. I don't remember why Neal said he wanted the wreck transferred to me after the accident. He paid for the transferring of the title."

On cross-examination by defendant's counsel, Ryder further testified:

"*Q.* When you signed this title on the day you bought this car, it was handed over to you, was it?

"*A.* I signed it. I didn't have it in my possession. I didn't carry it around."

The witness further testified that he thought it was necessary for his mother to sign the certificate of title, and therefore he took it to her for that purpose. His parents were witnesses in the case and corroborated his claim that this occurred after the accident. It further appears that the certificate of title, after having been indorsed by Robert Ryder and by his mother, was forwarded to the office of the secretary of State by defendant, or at his direction

This occurred on May 5, 1941, and thereafter a new certificate was issued. The following testimony by defendant is also significant:

"*Q*. Wasn't it understood ahead of time you were to hold the title until you got the balance of the money for the car?

"*A*. That is what he wanted.

"*Q*. You didn't object to it?

"*A*. It was immaterial to me either way.

"*Q*. You don't want the jury to believe it was all right with you for him to take the title when he hadn't paid for the car yet; do you?

"*A*. He was paying so much a week out of his wages.

"*Q*. Supposing he quit you; then what?

"*A*. I dealt with him quite a few years, and he always paid me.

"*Q*. The truth of the situation is, you wanted that car title to be held there until it was paid for, didn't you?

"*A*. I wouldn't say that.

"*Q*. You wouldn't want to commit yourself on that?

"*A*. No."

On the record before us we are unable to agree with defendant's contention that the undisputed testimony established transfer of the title to the car prior to the accident. It may not be said that the testimony in support of defendant's claim was uncontradicted. The rather obvious inconsistencies in the statements of the witnesses, together with the manner in which the transaction was handled, made the question one of fact for the jury. From the record made, conflicting inferences might reasonably have been drawn. Under the applicable principle discussed by this Court in *Boudeman* v. *Arnold,* 200 Mich. 162 (8 A. L. R. 789), there was no error in de-

nying the motion for a directed verdict, or in denying the subsequent motion for a new trial.

During the closing argument to the jury by counsel for the plaintiff, the following occurred:

"*Mr. Cholette:* I don't like to interrupt, but I will ask at this time that the court instruct the jury upon the question of delivery. Counsel stated that delivery of the title, properly signed and notarized, to one of the purchasers, is insufficient delivery. I want to take exception to his argument on that point. Delivery to one of the purchasers is sufficient delivery.

"*Mr. Reber:* I take exception to that.

"*Mr. Cholette:* In view of our controversy it makes it more important. I ask for instruction on the point of the sufficiency of delivery to one of the purchasers.

"*The Court:* All right."

The full text of the statement made by plaintiff's counsel, to which defendant's attorney objected, does not appear in the record. It may be assumed that he was stating his theory of the law, and that opposing counsel disagreed with him. It is claimed, in substance, that the failure of the trial court to state immediately to the jury the correct rule was reversible error. With this contention we cannot agree. The trial court might well have understood, from the request of counsel, that he was asked to cover the matter in his charge to the jury. We think that he did so with reasonable fullness and accuracy, and that in consequence defendant has no basis for his claim of error.

Attention is also called to certain excerpts from the charge of the trial court, relating to the alleged negligence of Ryder. These questions were not mentioned in the motion for a new trial, but have been included in defendant's statement of reasons and

grounds for appeal. The principal objection raised with reference to the charge refers to the following language of the trial court in advising the jury as to the duties of an operator of an automobile on a public highway.

"He is bound to comply with all State laws applicable to the operation of motor vehicles. There is one law applicable especially to this case. The operator of any vehicle upon a highway in this State, before starting or stopping, or turning from a direct line, shall first see that such movement can be made in safety, and shall give a signal as required in this section. The signal herein required shall be given by means of hand and arm, or by mechanical or electrical signal or device—conveying by signal a warning to other approaching drivers, or drivers approaching from the rear—the important part being that the driver in this particular lane, the center lane, before stopping and before turning, should see that such movement can be made in safety. Now if Ryder, the operator of this automobile, violated that statute, he is guilty of negligence."

It is obvious that the trial judge, in using the language quoted, was referring to the provisions of 1 Comp. Laws 1929, § 4711 * (Stat. Ann. § 9.1579), which reads as follows:

"(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and shall give a signal as required in this section.

"(b) The signal herein required shall be given either by means of the hand and arm in the manner herein specified, or by a mechanical or electrical signal device which conveys an intelligible signal or warning to another driver approaching from the rear.

---

* 2 Comp. Laws 1948, § 256.319.—REPORTER.

"Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to start, stop, or turn by extending the hand and arm horizontally from and beyond the left side of the vehicle."

It was held in *Sebastian* v. *Sherwood,* 270 Mich. 339, that the requirement of the statute with reference to the giving of the signal was intended for the benefit and protection of drivers approaching from the rear, and has no application in a case involving the collision of automobiles proceeding in opposite directions. The trial court in the case cited, which was somewhat comparable on the facts to the case at bar, charged that defendant "was negligent, as a matter of law, in turning across US–12 without giving any signal. He was at least negligent in that respect." It was conceded by defendant Sherwood that he had not given any signal indicating his intention to turn across the pavement. Under the circumstances the charge was held to be erroneous, and to require reversal of the case.

On behalf of plaintiff it is contended that defendant has placed an improper interpretation on the language of the trial court, and further that the proofs as to the conduct of Ryder were so conclusive that the trial court might properly have told the jury that he was guilty of negligence as a matter of law. The undisputed testimony of a deputy sheriff who went to the scene of the accident was that Ryder had an uninterrupted view to the east of approximately 800 feet. It is argued, in substance, that had he looked he could scarcely have failed to see the approaching car in which plaintiff was riding. Ryder testified that he did not see any approaching car, but failed to state whether or not he looked. There is much force in the claim that he did not make proper observations before turning across the north side

of the pavement, in order to ascertain if the movement could be made in safety, and that he was for that reason guilty of violating the statute to which the trial court directed attention in the language quoted.

Assuming that the issue of negligence was for the jury, it is apparent that the trial judge, in making the statement of which defendant now complains, was endeavoring to direct the attention of the jury to Ryder's duty to make proper observations before turning. It is a fair inference that the reference to the giving of the signal was inadvertently made, and was brought about by following the language of the statute above quoted. Having made such reference, the court apparently sought to correct it by indicating to the jury that the signal for the benefit of approaching drivers was required to be given for drivers approaching from the rear, and that the "important part" that the jury should consider was whether Ryder had taken proper precautions before turning across the pavement to determine that the movement could be made in safety. In order to further clarify the matter, the judge, immediately following the language above quoted, added the following:

"If Ryder failed to make proper and suitable observation to determine whether he could turn to the left and cross the left two lanes in safety, he would be guilty of negligence."

Instructions to a jury must be considered in their entirety, rather than by separate sentences or detached propositions. *Malone* v. *Newhouse,* 248 Mich. 516; *Nezworski* v. *Mazanec,* 301 Mich. 43; *Gaffka* v. *Railroad Co.,* 306 Mich. 246. Read in conjunction with the rest of the charge, and in the light of the other questions presented for determination, we do not think that the jury could have been misled

by the reference, in calling attention to the statute, to the signal required to be given for the benefit of drivers approaching from the rear. As before noted, the trial court indicated that the provision in the statute as to the signal was intended for the benefit of such drivers. It is not conceivable that any member of the jury could have regarded the omission to give the signal, if it was not given, as having any bearing whatever, under the facts in the case at bar, on the question of Ryder's negligence. The language of which defendant complains is not at all comparable to the charge found erroneous in *Sebastian* v. *Sherwood, supra.* We think that the charge is not open to the specific objection urged against it, and that the use of the language quoted was not error prejudicial to defendant.

Defendant also directs attention to other excerpts from the charge and predicates claims of error thereon. We have examined such claims and are impressed that they are without substantial merit. The record indicates that the case was carefully tried, and that the charge to the jury, considered in its entirety, fully and clearly presented the issues to be determined. We find no reversible error. The judgment is affirmed, with costs to plaintiff.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, and BUTZEL JJ., concurred with CARR, J.

BOYLES, J., concurred in the result.