PLASMAN v. FOREMOST INSURANCE COMPANY.

1. INSURANCE—MASTER POLICY TO INDEMNIFY MORTGAGEE—CERTIFICATES TO OWNERS.

Specific provisions of an indemnity insurance policy must be read in the light of the general purpose sought to be accomplished by a master policy to cover the interest of bank as mortgagee, and certificates of insurance to cover individual owners of cars financed by the bank.

2. SAME—AUTOMOBILE FINANCING—COVERAGE OF REPLACEMENT CAR.

Contract of indemnity insurance covering interests in purchased automobiles, financed by bank, of both bank and owner purchasers held, to have contemplated that insurance on a replacing automobile should attach by way of transfer on the delivery thereof to the owner of the replaced car on which insurance should then automatically terminate even before the turning over of a certificate of title to the purchaser of the replacement car (CLS 1956, § 257.233).

3. AUTOMOBILES—DELIVERY—CERTIFICATE OF TITLE.

It is a matter of common knowledge that in the purchase of an automobile delivery of the vehicle frequently precedes the turning over of a certificate of title (CLS 1956, § 257.233).

4. INSURANCE—AUTOMOBILES—TITLE—DELIVERY—COVERAGE OF REPLACEMENT.

Indemnity insurance covering interests in purchased automobiles, financed by bank, of both the bank and owner purchasers is construed as covering a replacement car after delivery thereof to the purchaser, who was entitled to the furnishing of a certificate of title and such was to be furnished him in due course, where in the policy such a transaction referred to *ownership* of the newly-acquired automobile (CLS 1956, § 257.233).

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobile Insurance § 3.
[2, 4] 5A Am Jur, Automobile Insurance § 85.
[3] 5A Am Jur, Automobiles and Highway Traffic § 161 *et seq.*
[5] 5A Am Jur, Automobile Insurance §§ 10–12.
[7] 29 Am Jur, Insurance § 245 *et seq.*
[10] 14 Am Jur, Costs § 92.

5. SAME—AUTOMOBILES—POSSESSION—TITLE.

A valid contract of insurance may exist between the prospective owner of an automobile and an insurer to protect the former against perils of use dependent upon possession irrespective of the status of registered ownership (CLS 1956, § 257.233).

6. SAME—BANK'S MASTER INDEMNITY POLICY—CERTIFICATE OF INDIVIDUAL CAR OWNER.

The master policy of indemnity insurance, issued to bank which financed the purchase of automobiles, must be read in conjunction with the individual purchaser's certificate of insurance for the purpose of ascertaining the nature and extent of the coverage afforded the 2 distinct interests in the car named in the latter's certificate, the insurance being primarily for the benefit of the bank as the financing agency, the purchaser in the event of loss being entitled to the difference between the then actual value and the mortgage lien.

7. SAME—CONSTRUCTION OF POLICY.

An unambiguous contract of insurance must be construed as it reads and in the light of the purpose sought to be accomplished thereby.

8. SAME—AUTOMOBILE FINANCING—REPLACEMENT TRANSACTIONS.

A contract of indemnity insurance whereby bank as financing agency in the purchase of automobiles had obtained a master policy pursuant to which individual certificates of insurance were issued owners and which embraced replacement transactions would not be altered by the refusal of the bank to finance the purchase of a replacement car or to increase the measure of protection afforded by the contract.

9. SAME—AUTOMOBILES—COVERAGE ON REPLACEMENT CAR.

Car owner who traded in his insured car toward a newer and more expensive car which the bank holding lien against older car declined to finance *held,* entitled to recover from indemnity insurer upon total loss of new car the next day after delivery but before certificate of title of new car was forthcoming an amount represented by the extent the insurance was applicable to the replaced car, such amount being measured by amount allowed as trade-in value of old car less $100 deductible under terms of policy and less amount of salvage insured had realized on ruined car.

10. COSTS—FAILURE OF EITHER PARTY TO PREVAIL ON APPEAL.

No costs are allowed upon affirmance of judgment entered in action at law, where two parties have appealed, since neither appeal has been sustained.

Appeal from Kent; Searl (Fred N.), J. Submitted October 17, 1961. (Docket No. 88, Calendar No. 48,-921.) Decided March 16, 1962. Rehearing denied May 17, 1962.

Action by Paul B. Plasman against Foremost Insurance Company, a Michigan corporation, on automobile finance collision insurance policy following trade-in of insured automobile and destruction of newly-purchased automobile. Judgment for plaintiff for clear value of automobile less salvage and deductible items. Plaintiff appeals claiming full value. Defendant cross-appeals. Affirmed.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel), for plaintiff.

*Cheff & Servaas (Stanley Cheff,* of counsel), for defendant.

CARR, J. The material facts in this case are not in dispute. In June, 1952, and thereafter, the Union Bank of Michigan, located in the city of Grand Rapids, was engaged as a part of its operations in the financing of automobiles. For the purpose of protecting itself against loss it procured from the defendant in this case a policy of indemnity insurance covering its financial interest, as mortgagee or otherwise, in any automobile subject to the policy. The owners of cars so financed were also protected as to their interest in any damaged vehicle financed through the Union Bank, to the extent of their interest in the vehicles covered and subject to the interest of the Union Bank which was designated in the policy as the "named insured."

Pursuant to the so-called master policy issued to the financing agency, certificates of insurance were issued to individual owners. Said certificates and

the master policy must be read together in order to determine the precise nature of the coverage of insured automobiles. The general situation existing is fairly indicated by the following provision of the master policy:

"1. Interests insured. The interests of Union Bank of Michigan or any assignee thereof, herein called the 'named insured,' and of retail purchasers financing or refinancing the purchase of automobiles or borrowers pledging automobiles for the security of loans, herein called 'purchasers or borrowers,' in automobiles described in individual policies or certificates issued in connection with this master policy are insured hereunder as provided in this master policy and in such individual policies or certificates, and loss, if any, is payable to the named insured and purchaser or borrower as their respective interests may appear."

In the spring of 1956 plaintiff in the instant case acquired a Ford automobile which he financed through the Union Bank. In accordance with the insurance arrangement above indicated, a certificate was issued to him referring specifically to the master policy entered into between defendant and the financing agency. Said certificate stated that the insurance on plaintiff's car became effective on March 27, 1956, for a period of 1 year. However, it listed the purchase date of the Ford as April 4th of said year. The variance in dates suggests that the insurance became effective on the date of delivery of the Ford to plaintiff, and that the automobile was deemed to have been purchased on transfer of title. The certificate set forth the then existing lien of the Union Bank in the sum of $1,455.93.

The terms of the insurance contract, including the master policy and the certificate issued thereon to the individual car owner, disclose that the general plan and purpose was to protect the "named"

insured" to the extent of its lien and to provide indemnity insurance for the individual owner for loss resulting from specified causes to the extent of his interest measured by the difference between the actual cash value of the vehicle and the lien thereon. The provision of the master policy above quoted indicates that each insured was protected in accordance with the respective interests thereof. Such appears to have been the understanding of the plaintiff as indicated by his testimony on the trial in circuit court. On cross-examination, after expressing doubts as to whether he had read all of the certificate of insurance issued to him by defendant, he testified as follows:

"*A.* I knew that I, of course, had taken the loan out with Union Bank.

"*Q.* And you knew then—

"*A.* (Continuing): —their name probably would appear.

"*Q.* And that for the purpose of covering their interest to the extent of your mortgage, is that right?

"*A.* That's right, that's why I took the policy out.

"*Q.* And your interest for what was left over?

"*A.* That is correct."

By the terms of the insurance contract the Union Bank assumed liability for the payment of the required insurance premiums. Plaintiff made his payments to the bank in accordance with the financing arrangement. There is no question as to the existence of insurance on plaintiff's Ford automobile, or on the nature and extent of such coverage.

In the early part of 1957 plaintiff desired to purchase a Studebaker automobile and for such purpose contacted the Venhuizen Auto Company of Holland, Michigan. After some negotiations it was learned that an automobile of the type that plaintiff desired could be procured from the Studebaker-Packard Corporation in the city of Detroit. Thereupon plain-

tiff entered into an agreement with the Venhuizen Auto Company for the purchase of the Studebaker, his Ford to be taken in part payment of the purchase price. Accordingly he delivered the certificate of title to the Ford and signed in blank a chattel mortgage form with the understanding that it would be filled out in such manner as to create a lien on the Studebaker car.

The Union Bank was contacted but declined to finance the transaction. Thereupon the Venhuizen Auto Company made arrangements for such financing with another corporation, and its salesman went to Detroit to accept delivery of the car that plaintiff had agreed to purchase, and returned to Holland with it. Plaintiff was notified that it had arrived, and delivery was made to him during the evening of February 22, 1957. At that time plaintiff removed his personal possessions from the Ford and placed them in the Studebaker, which he proceeded to drive to Grand Rapids. Pursuant to arrangement, he brought the car back on the following day for certain adjustments and to have it simonized. While driving the car during the evening of February 23, 1957, it went off the road, struck a tree or a pole, and was so badly damaged that no attempt was made to repair it. It had a salvage value of $250 which plaintiff received.

It appears from the testimony that at the time of the delivery of the Studebaker to plaintiff the Venhuizen Auto Company did not know that a certificate of title had been issued therefor. Such was the case, however, the car having been used to some extent by an executive officer, or employee, of the manufacturer. On the 27th of February, 4 days after the accident in which the car was practically destroyed, a sight draft was received at Venhuizen Auto Company's bank in Holland, and attached thereto was the certificate of title which had been

duly assigned to the selling agency by the Studebaker-Packard Corporation. The draft was duly honored, and the certificate of title was assigned to plaintiff. Subsequently, under date of March 7, 1957, the mortgage which the Union Bank held on the Ford that plaintiff had traded in as part payment for the Studebaker was discharged, the lien being paid in full.

Plaintiff brought this action against defendant on the theory that under the contract of insurance the Studebaker was automatically covered for his benefit to the full extent of its value, which the parties had stipulated was the sum of $3,200 at the time of the accident. Defendant disputed such claim in the trial court, and also on this appeal, asserting that under the specific language of the policy the Studebaker automobile was not covered, either wholly or in part. Involved in the case are certain specific provisions of the policy which must be read in the light of the general purpose sought to be accomplished thereby. As before suggested, the master policy issued to the Union Bank as the named insured and the certificate of insurance issued to plaintiff when he acquired the Ford automobile must be construed together. Among the special provisions contained in the master policy are the following:

"Automatic insurance for newly-acquired automobiles: If the insured who is the owner of the autobile acquires ownership of another automobile and so notifies the company within 30 days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobile as of such delivery date:

"(a) if it replaces an automobile described in this policy, but only to the extent the insurance is applicable to the replaced automobile, or

"(b) if it is an additional automobile and if the company insures all automobiles owned by the in-

sured at such delivery date, but only to the extent the insurance is applicable to all such previously owned automobiles;

provided, when a limit of liability is expressed in the declarations as actual cash value, such limit shall apply to such other automobile, and when a limit of liability is so expressed as a stated amount, such limit shall be replaced by the actual cash value of such other automobile, but any deductible amount so expressed shall apply in either case.    *    *    *

"The insured shall pay any additional premium required because of the application of the insurance to such other automobile. The insurance terminates upon the replaced automobile on such delivery date."

The trial of the case was started in circuit court before a jury but at the conclusion of the proofs the trial judge decided that there were no issues of fact involved and that the questions of law, including the construction of the contract, were for determination by the court. Accordingly the jury was excused and the matter was submitted on the proofs that had been received and on the arguments of counsel. In a well-considered opinion the circuit judge hearing and determining the matter concluded that under the express language of the contract the Studebaker, having been acquired for the purpose of replacing the Ford, was covered in plaintiff's favor to the extent of his interest in the Ford, that the value of such interest was $1,000, the sum for which credit was given on the purchase of the Studebaker, and that from such amount should be deducted the salvage value recovered and the further sum of $100 which was deductible under the terms of the policy, leaving a balance of $650 for which judgment was entered in plaintiff's favor. Both parties have appealed.

On behalf of defendant it is insisted that at the time of the accident plaintiff was not the owner

of the Studebaker for the reason that no certificate of title had been delivered to him. Reliance is placed on the language of CLS 1956, § 257.233 (Stat Ann 1952 Rev § 9.1933), requiring the assignment and delivery of certificate of title on the sale of a motor vehicle by an owner to whom such a certificate has been issued. We are not concerned with amendments to the statute that have been made since the transaction here involved. It will be noted that the language quoted from the special provisions of the master policy refers to the acquisition of "ownership of another automobile."

It is argued in substance that plaintiff cannot claim coverage of the Studebaker at the time of the accident in which it was practically destroyed because, not having received a certificate of title, he was not then the owner. Said statute has been applied in a number of cases, fairly typical of which are: *Endres* v. *Mara-Rickenbacker Co.*, 243 Mich 5; *Noorthoek* v. *Preferred Automobile Ins. Co.*, 292 Mich 561; and *Sroka* v. *Catsman Transit-Mix Concrete, Inc.*, 350 Mich 672. In none of the cases cited is the factual situation analogous to that presented in the case at bar.

Significant is the language contained in the special provision above quoted that "such insurance as is afforded by this policy applies also to such other automobile as of such delivery date." It thus appears from the language of the contract of insurance that the parties contemplated that insurance on a replacing automobile should attach by way of transfer on the delivery thereof to the owner of the replaced car on which insurance should then automatically terminate. It is a matter of common knowledge that in the purchase of an automobile delivery of the vehicle frequently precedes the turning over of a certificate of title. As before suggested, it is quite possible that this occurred when

plaintiff purchased the Ford car in 1956. It appears from the certificate of insurance issued to him by defendant that the effective date of the insurance on the Ford preceded by approximately 1 week the date of purchase as indicated therein.

In the case at bar it is unquestioned that plaintiff parted with his interest in the Ford, that he signed a blank form of chattel mortgage which was later filled out, in accordance with the agreement, creating a lien on the Studebaker, that the Studebaker was delivered to him in recognition of his right to the possession thereof, that he was entitled to the furnishing of a certificate of title, and that it was intended on the part of Venhuizen Auto Company that such would be procured in due course. The trial judge rejected defendant's claim that under the contract of insurance here involved plaintiff's interest in the Studebaker was not covered by insurance. We are in accord with the holding of the circuit judge. Our attention has not been directed to any decisions of this Court involving issues of the precise nature here presented. However, the cases of *Wood* v. *Merchants Insurance Co.,* 291 Mich 573, 577, and *Payne* v. *Dearborn National Casualty Company,* 328 Mich 173, 182, and the prior decisions cited in the opinion in the latter case, suggest that under unusual circumstances the language of the statute on which defendant relies is not conclusive. Such view is consistent with holdings in other States.

In *Blixt* v. *Home Mutual Insurance Company of Iowa,* 145 Neb 717 (18 NW2d 78), suit was brought on an insurance policy issued to the plaintiff on a Chevrolet automobile. The policy contained a provision that:

"If the named insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this policy ap-

plies also to such other automobile as of the date of its delivery to him" (subject to certain specified conditions).

While said policy was in effect plaintiff exchanged the Chevrolet for a Dodge. This transaction occurred on November 9, 1940, but the title to the Dodge was not assigned to plaintiff until November 20th of said year, and the assignment did not reach plaintiff until on or about November 29th following. An accident occurred on December 2, 1940, in which the Dodge car was damaged. Plaintiff sought to recover on the policy, although he had failed to give notice during the 10-day period following the delivery of the Dodge. It was his claim on the trial of the case that under the statute of the State providing that the title to a motor vehicle should be evidenced by a certificate thereof, issued pursuant to the statute, he had 10 days from and after the delivery of the title to him in which to give the required notice to the company, it being 1 of the conditions of the policy that in case of a replacement of a covered automobile the insured should notify the company within 10 days. It was held, in consequence, that the notice was not seasonably given and that insurance on the Dodge was not in force and effect from and after the expiration of the period specified for giving notice. It is significant, however, that the court determined that insurance for the period of 10 days was effective on the Dodge from the time of its delivery to the plaintiff. It will be noted that the policy, as in the case at bar, referred to "ownership" of the newly-acquired automobile.

A like conclusion was reached in *Dean* v. *Niagara Fire Ins. Co.*, 24 Cal App 2d Supp 762 (68 P2d 1021). There, as in the case at bar, the policy of insurance provided that an automobile procured to replace

.

the vehicle described in the policy should be covered as of the date of delivery. Commenting thereon, it was said (p 766):

"There is nothing in the policy to suggest or justify giving to the word 'delivery' as used therein any meaning other than its ordinary one, which in the context quoted, would signify a handing over of physical possession and control of the automobile. The fact that the motor vehicle code provides that (sec. 186) 'No transfer of the title or any interest in or to a vehicle registered hereunder shall pass nor shall delivery of any said vehicle be deemed to have been made and any attempted transfer shall not be effective for any purpose until transfer of registration is made and the department has issued a new certificate of ownership and registration card' except as therein provided, does not prevent the owner or prospective owner of an automobile from validly contracting for insurance against perils of use dependent upon possession irrespective of the status of registered ownership. (*Golden Gate Motor Transport Co.* v. *Great American Indemnity Co.* [1936], 6 Cal2d 439, 445 [58 P2d 374].) Other sections of the motor vehicle code (for examples see secs. 177, 178, 179) mention delivery or transfer of possession of motor vehicles in a *de facto* sense and it is obviously in that sense that the reference is made in the policy here involved. We are satisfied that the evidence is legally sufficient to support the implied finding that prior to the accident described in the complaint the 1935 sedan had been 'delivered' to plaintiff and that it had 'replaced' *in his use,* as contemplated by the insurance contract involved herein, the 1934 automobile described therein. The evidence also establishes that plaintiff did acquire the legal status of registered owner of such 1935 model not later than January 10, 1936; having acquired ownership of the car the insurance protection thereon, by the terms of the policy above quoted, attached as of the date of delivery of possession

whether that date was prior or subsequent to registration of title."

In accord with the above decisions is *Maryland Casualty Company* v. *Toney,* 178 Va 196 (16 SE2d 340). There the insurance policy provided that:

"If the named insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this policy applies also to such other automobile as of the date of its delivery to him."

Said provision was subject to expressed conditions to the effect that notice should be given to the insurer within 10 days following delivery of the newly-acquired vehicle, and that the coverage thereon was the insurance "applicable to the replaced automobile." The required notice was not given but the court (p 204) clearly recognized that the policy was in effect during said period of 10 days and that if the newly-acquired automobile had been damaged in an accident during such period the owner would have been protected under the policy if the conditions thereof were observed. We think that the principles recognized in the foregoing decisions are applicable in the case at bar and that, in consequence, plaintiff was entitled to the benefit of the contract of insurance applicable to his car to the extent provided in said contract.

This brings us to a consideration of the question as to the amount of recovery to which plaintiff was entitled. Under the specific terms of the master policy issued to the Union Bank, which must be read in conjunction with plaintiff's certificate of insurance for the purpose of ascertaining the nature and extent of the coverage afforded, there were obviously 2 separate and distinct interests in the Ford. The named insured, having financed the transaction, was protected to the extent of its lien on the automobile.

It is obvious, of course, that the form of insurance contracted for was primarily for the protection of the named insured. However, under the terms of the master policy and of the certificate of insurance issued to him, plaintiff was entitled to claim indemnity, in the event of total destruction, to the extent of the difference between the actual value of the insured vehicle and the mortgage lien thereon. Lesser damage than total destruction would, of course, be apportioned in accordance with the coverage afforded to the named insured and the purchaser, or borrower.

After plaintiff had transferred ownership and possession of the Ford to Venhuizen Auto Company, his protection on that car automatically terminated. However, the named insured, the Union Bank, continued to be protected until its mortgage was paid on the 7th of March following. In other words, at the time of the accident the Union Bank was covered by the insurance policy issued to it by defendant. Insofar as plaintiff was concerned, the Ford was replaced by the Studebaker, and, under the terms of the policy the latter vehicle was covered only to the extent that the insurance was "applicable to the replaced automobile." Had the Union Bank consented to finance the purchase of the Studebaker, there could be no question as to the coverage of its lien on that car, and of plaintiff's interests therein, in the same manner as were the respective interests in the Ford, assuming, of course, that the additional premium required for the coverage of said interests was duly paid as required by the terms of the master policy.

The language of the contract as to the extent of the coverage that plaintiff was entitled to claim with respect to the Studebaker is not ambiguous. It was obviously contemplated that the newly-acquired car should be substituted for the replaced car, and that

the provisions of the contract should apply thereto in the same manner as intended with reference to the vehicle described in the certificate of insurance. The contract must be construed as it reads and in the light of the purpose to be accomplished thereby. The refusal of the Union Bank to finance the purchase by plaintiff of the Studebaker may not be given the effect of altering the terms of the policy of insurance on which plaintiff's cause of action is based, or increasing the measure of protection afforded by that contract.

The trial judge correctly disposed of the case and the judgment entered is affirmed. No costs, neither appeal having been sustained.

DETHMERS, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., took no part in the decision of this case.