Orville J. LOUCKS, next friend of Walter L. Loucks, a minor, Plaintiff-Appellant,

v.

CARL FOSTER & WARDS USED CARS, a co-partnership, consisting of George C. Simons and Daniel E. Fox, Defendants-Appellees.

Orville J. LOUCKS, Plaintiff-Appellant,

v.

CARL FOSTER & WARDS USED CARS, a co-partnership, consisting of George C. Simons and Daniel E. Fox, Defendants-Appellees.

Nos. 15356, 15357.

United States Court of Appeals.

Sixth Circuit.

July 9, 1964.

that one of the partners notarized the signature of the other in executing the title transfer. The public policy which generally disqualifies a person from acting as notary in the execution of an instrument in which he is an interested party is said to totally vitiate the change of ownership, even though the purchaser took, and retained, exclusive possession and control of the vehicle as its owner.

■ The appeals before us are from the dismissal, as to appellees, of plaintiff-appellant's complaints, which charged that defendants-appellees, George C. Simons and David E. Fox, a co-partnership, doing business as Wards Used Cars, were the owners of a motor vehicle involved in an accident in which plaintiff Loucks' minor son was injured. In appeal 15,356, Loucks proceeds as next friend of his son, and in appeal 15,357, he asserts his claim as parent. The accident occurred on August 5, 1961, when the vehicle in question was being driven by co-defendant Carl Foster, to whom Wards Used Cars had sold the vehicle on May 22, 1959. In carrying out the sale, the reassignment of title was executed by appellee Simons and was sworn to before his partner, Fox, who was a notary public. Fox was not identified on the jurat as such partner, so that the reassignment was complete and regular on its face. So executed, it was delivered to the purchaser Foster, who immediately took and retained exclusive possession and control of the vehicle and on June 8, 1959, obtained from the Michigan Secretary of State a new certificate of title in his own name. The involved accident occurred some two years and four months later, when the vehicle in question was being driven by Foster.

Plaintiff's claim of defendants' liability rests upon two sections of the Michigan Motor Vehicle Code and upon the construction placed on one of them by the Michigan Supreme Court. In M. S.A. § 9.2101, C.L.Mich.1948, § 257.401, Michigan charges the "owner" of a vehicle with liability for its negligent operation by anyone driving it with such owner's "express or implied consent or

William P. McCarthy, Detroit, Mich., Droomers & McCarthy, Warren C. Droomers, Detroit, Mich., on brief, for appellant.

Ralph J. Kelley, Detroit, Mich., George Belitsos, Detroit, Mich., on brief; George Stone, Detroit, Mich., of counsel for appellees.

Before MILLER, CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

■ This appeal involves a case where liability for personal injury is sought to be imposed upon a partnership of used car dealers because, in a bona fide sale of an automobile, occurring upwards of two years prior to the involved accident, an alleged error was committed in transferring the vehicle's certificate of title. The claim of defect resides in the fact

knowledge." M.S.A. § 9.1933(d), C.L. Mich.1948, § 257.233, prescribes the requirements for the assignment of a motor vehicle's certificate of title. One of these is that the execution of the assignment be "sworn to before a notary public." Plaintiff asserts that the title transfer here was not "sworn to before a notary public" because partner Fox was not qualified to notarize partner Simons' signature. Therefore, plaintiff claims, the dealers remained the owners of the vehicle and, having delivered it to Foster with the intention that he should be its owner, they consented to his driving it thereafter. Thus, he claims, they are liable for Foster's alleged tort.

We have recently had occasion to review the Michigan cases which, in varying factual situations, have held that failure to comply with M.S.A. § 9.1933 (d) prevented the accomplishment of an effective transfer of title. Dodson v. Imperial Motors, Inc., 295 F.2d 609, 612–614 (CA 6, 1961). We pointed out there that the transfer statute does not, by its own words, declare void a transfer failing to strictly comply with it. The statute declares such failure a misdemeanor and from that the Michigan court, *upon the facts of the particular cases,* struck down as invalid noncomplying transfers. In Dodson we held, following the Michigan cases, that the transfer was not effective if it had not been "sworn to before a notary public." In that case, an injured plaintiff was attempting to hold an automobile dealer liable for the tort of another who, although having agreed on a trade-in of a vehicle owned by him, was still driving it at the time of the accident. It was claimed that the tortfeasor had left his certificate of title with the dealer an hour or two before the accident and that its transfer had been notarized. This was disputed, and it was shown that the tortfeasor had not yet taken delivery of his new car and was continuing to drive his old one when the tort was committed. We held that if it was the fact that the transfer of the title to the vehicle being driven by its original owner had not been

"sworn to before a notary public" at the time of the accident, the dealer could not be held to have become its owner.

In the case before us, the attacked reassignment had in fact been "sworn to before a notary public" when it, and the vehicle, were delivered to the purchaser. The title certificate was forthwith delivered to the Michigan Secretary of State and a new title issued. Every letter of the Michigan transfer statute had been strictly complied with.

The disqualification of a notary because of interest is not a product of statute, nor is the rule's purpose and reach precisely defined by the language of the texts or decided cases which assume to recite it. As a proposition of general law it is discussed as follows:

"* * * an officer or a person otherwise legally authorized to take acknowledgments is not qualified to act where he has a financial or beneficial interest in the proceedings or will acquire such an interest under the instrument to be acknowledged. "Frequently it is said that this rule rests upon grounds of *public policy,* the purpose being to close the door to temptation to fraud. Other decisions have found the reason for the rule in the *probative force* accorded to the officer's certificate. Undoubtedly, it is unwise and contrary to *public policy* for an officer to take an acknowledgment to any instrument to which he is a party or in which he is interested directly or indirectly." (Emphasis supplied.) 1 Am.Jur. (2) Acknowledgments § 16, p. 458.

Michigan has followed this general rule and has denied, or been prepared to deny, enforcement to legal instruments where essential notarization had been made by a party in interest. Groesbeck v. Seeley, 13 Mich. 329, 345 (1865), a grantee in a deed; Laprad v. Sherwood, 79 Mich. 520, 524, 44 N.W. 943, 944 (1890), a mortgagee; Smalley v. Bodinus, 120 Mich. 363, 79 N.W. 567 (1899), where a partner notarized the execution by his co-partner of a notice of a me-

chanic's lien. It is fair to say that these decisions were made by the Michigan court in its service of public policy in cases where the disqualified notary was *directly* seeking enforcement of the document in question. The case before us presents a *collateral* attack not only upon the accused reassignment, but upon a certificate of title issued by the State of Michigan upon papers presented to its officers, which in all apparent respects complied with the letter of its laws. We believe that Michigan disclosed a distaste for quixotic extension of this doctrine of public policy in the case of La Fromboise v. Porter, 261 Mich. 483, 487, 246 N.W. 193, 194 (1933), where its Supreme Court said:

> "The nature of the interest which will disqualify a notary depends upon circumstances and does not rest in *general rule of law.* * * * An important consideration is whether he would take direct benefit from his act. The courts will not search for indirect and remote benefits to work disqualification, especially where the rights of third parties intervene." (Emphasis supplied.)

We think it can also be fairly said that the construction placed upon the Michigan transfer statute, that failure to comply with it voids title transfer, had its origin in concepts of public policy. In the first case which announced the general rule, Endres v. Mara-Rickenbacker Co., 243 Mich. 5, 8, 219 N.W. 719, 721 (1928), the court stated: "The act is designed to discourage and to prevent stealing of automobiles, to protect the public against crime." The Michigan court relied upon Cashin v. Pliter, 168 Mich. 386, 389, 134 N.W. 482, 483 (1912), where it had said:

> "The general rule is well settled that, where statutes enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, contain a prohibition and impose a penalty, all contracts in violation thereof are void."

That the Michigan court continues to look upon insistence on compliance as a matter of public policy is evidenced by its view that the Motor Vehicle Code was adopted "to protect the public against fraud and imposition in transactions involving the titles of motor vehicles, and to discourage larceny and unlawful disposition of such vehicles." Taylor v. Burdick, 320 Mich. 25, 30–31, 30 N.W.2d 418, 421 (1948). The Michigan court has also, in several cases, refused to find that title to a vehicle had not passed where there were irregularities in its transfer of greater magnitude, in our view, than the defect asserted in the transfer before us. Schomberg v. Bayly, 259 Mich. 135, 242 N.W. 866 (1932); Fleckenstein v. Citizens' Mut. Auto. Ins. Co., 326 Mich. 591, 40 N.W.2d 733 (1950); Kube v. Neuenfeldt, 353 Mich. 74, 90 N.W.2d 642 (1958); Plasman v. Foremost Ins. Co., 365 Mich. 586, 595, 113 N.W.2d 906, 910 (1962). In Schomberg v. Bayly, it took occasion to rule that in some instances, "substantial, if not literal, compliance with the law" is sufficient to protect the seller. (259 Mich. 139, 242 N.W. 867.)

In each of the Michigan cases which have developed the policy of finding invalid attempted transfers of title, there was present a total neglect of some essential element prescribed by the Act, e. g., Endres v. Mara-Rickenbacker Co., 243 Mich. 5, 219 N.W. 719 (1928); Bayer v. Jackson City Bank & Trust Co., 335 Mich. 99, 55 N.W.2d 746 (1952); Seppala v. Neal, 323 Mich. 697, 36 N.W.2d 186 (1949); and in our own case of Dodson v. Imperial Motors, Inc., supra, we were dealing with a complete failure of notarization. In the case before us, every required step was literally complied with, but invalidity is charged because of an alleged taint in one of the steps—a taint probably growing out of innocent ignorance of an obscure principle of public policy. We need not emphasize how little security there would be in certificates of title issued by the Michigan Secretary of State if they could be found invalid long after the

event because of such a thin cloud as we have been talking about.

The Supreme Court of Michigan has never had occasion to apply its public policy to a situation comparable to this case. We are satisfied that it would agree with our conclusion that Michigan's public policy, both in the matter of title transfers and in the purity of notarial activities, has not been offended by the transaction here involved. We hold that the defendant partners were not the owners of the vehicle driven by defendant Foster.

Judgment affirmed.