No. 87-80

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

JOAN McWILLIAMS,
          Plaintiff and Respondent,
     -vs-

JEAN CLEM, CLEM'S WORD PROCESSING
CENTER, CLEM'S PLACEMENT SERVICE,
DEE ANN LANGEL and STAN TENNEY,
          Defendants and Appellants,
     -vs-

GEORGE McWILLIAMS,
          Third Party Defendant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Wellcome, Frost & Bartlett; Albert Frost, Bozeman,
          Montana
          Corette, Smith, Pohlman & Allen; Lisa Swan, Butte,
          Montana
          Eula Compton, Bozeman, Montana

     For Respondent:

          Heberling Law Firm; Allan McGarvey, Kalispell,
          Montana
          Karl Knuchel, Livingston, Montana

                              Submitted on Briefs: June 4, 1987

                                 Decided: September 10, 1987

Filed: SEP 10 1987

*Ethel M. Harrison*
_____
          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

We have here a case where a notary public, at the behest of a husband, took the acknowledgment of a deed transferring real property without the notary knowing or having satisfactory evidence that the wife, whose name appeared on the deed as a signator-grantor, was the individual described in and who executed the deed. The wife was not present before the notary public at the time of the acknowledgment, nor was contact made with the wife by the notary public. Nevertheless, the notary public signed the certificate of acknowledgment contained in the deed instrument as if the wife had personally appeared before the notary public and made the acknowledgment. We determine principally that the notary public was negligent in the performance of official duty, and is liable for such damages as are proximately caused by such negligence.

This appeal comes to us from the District Court, Eighteenth Judicial District, Gallatin County, Montana. Judgment was entered by the court, sitting without a jury, in favor of the wife, Joan McWilliams, holding that the deed was void as to Joan; that Joan should recover $19,950 from the notary public for loss of use, and $17,000 in attorney fees; and that Dee Ann Langel, the grantee in the deed, was jointly and severally liable with the notary public for Joan's loss of use in the sum of $19,950. Jean Clem, Clem's Word Processing Center, Clem's Placement Service, Dee Ann Langel and Stan Tenney, all appeal from the judgment, some from different facets of the judgment, which will be explained as we go along.

In the issues presented on appeal, no attack is made by the appellants on the findings of fact of the District Court. We utilize those findings therefore as background for this case.

George and Joan McWilliams were married in 1955. Eight children were born to their marriage. They constructed a residence in 1975 large enough to accommodate their family on the real property here involved. The residence was subject to a trust indenture in the principal amount of $70,000, for a loan in 1976 by Home Federal Savings and Loan Association.

During the course of their marriage, George McWilliams handled all of the business transactions of the family, and Joan relied on him for all business decisions. Joan is not knowledgeable in the ways of business or law. She denied ever knowingly signing blank documents and claimed that she tried to understand what she was signing. She admitted sometimes that her husband pressured her to sign documents without explanation. She never knew the extent of her husband's business or personal dealings.

In 1980, the McWilliams' subdivided their real property into building lots called Tracts A and B with the residence located on Tract A.

Joan McWilliams left the residence in June, 1980. At the time, the property was in good condition and had a rental value of $700 to $800 per month and a fair market value of $165,000. Tract B was valued at $30,000. Joan McWilliams knew the property had been listed for sale, and from her husband's statements, she believed that the property was rented.

In 1981, Joan McWilliams moved to Ft. Collins, Colorado. The parties separated in June, 1981, and thereafter, the contacts were very limited because there had been a violent encounter at the time of the separation. At times, George

would return without his wife's consent to her apartment and stay overnight. Their feelings after the date of separation were not amicable, and there were no business dealings after the separation date.

From June, 1980, to June, 1981, the residence was vacated and had fallen into disrepair. Thomas and Dee Ann Langel moved to the property on June 14, 1981, as a rental and later purported to purchase the residence. After they moved in, they did considerable work on the residence in the form of repair and replacement. By warranty deed dated August 26, 1981, George McWilliams and Joan McWilliams purported to sell their interest in both Tracts A and B to Dee Ann Langel. The court found, however, that the evidence established that Joan C. McWilliams did not sign the deed, although her signature on the deed is legitimate. The court stated, "George McWilliams somehow obtained her signature prior to that time, and, thereafter, filled in the information to convey Tracts A and B to Dee Ann Langel. The deed was then presented to Jean Clem for completion of the acknowledgment, and notarization of the deed."

The court found that Jean Clem, as a notary public, did not make the necessary verification that Joan C. McWilliams had signed the deed, nor did she require that Joan C. McWilliams appear before her and make the acknowledgment. When Home Federal Savings and Loan Association found out about the deed, it declared the unpaid balance on the trust indenture of $66,012.31 accelerated and demanded payment. On January 28, 1982, an agreement was made with Home Federal Savings and Loan Association whereby Thomas and Dee Ann Langel agreed to assume the loan at an increased interest. The modification agreement contained a forgery of Joan C. McWilliams' signature.

At the time of the acknowledgment, Joan McWilliams was living in Colorado. In September, 1982, she heard from an acquaintenance that the house had been sold. She expressed surprise and shock at this information and investigated the matter in December, 1982, in Bozeman, Montana. She obtained a copy of the Langel deed at the courthouse and confronted Jean Clem about the improper acknowledgment. Jean Clem admitted that she assumed Joan McWilliams' signature was legitimate and stated she had similarly completed acknowledgements of existing signatures for George McWilliams at other times. Joan McWilliams also confronted Thomas Langel and was then shown documents of sale.

The District Court outlined other questionable transactions that had occurred at and following the time of the purported transfer of the real property from the McWilliams' to Dee Ann Langel. George McWilliams obtained a $30,000 loan from Western Federal on August 26, 1981, forging his wife's signature on the loan documents. Of this borrowed amount, $25,000 was said to be credited to Thomas Langel as a downpayment on the residence, with McWilliams also receiving a lot in a subdivision known as Hyalite Foothills. Langel was a business associate at times with McWilliams. The court found that Thomas Langel was "also prone to questionable business transactions." As an example, on August 27, 1981, one day after the purported purchase of the residence, he caused a contract for deed to be prepared for Tract B. A friend, Stan Tenney, a Bozeman police officer, was said to be the purchaser, and the purchase price was listed at $37,500, although no consideration was ever paid. Langel caused the contract to be sold to Gallatin Dairy pension plan and agreed privately with Tenney to make the Tenney payments to the pension plan. This fictitious transaction apparently was for the purpose of raising money for Langel.

No title insurance was obtained concerning the purported transfer from the McWilliams to Dee Ann Langel in August, 1981. In September, 1982, Joan McWilliams found unsigned deeds dated November, 1981, with the McWilliams as grantors and Thomas and Dee Ann Langel as grantees of Tract A and B respectively.

In the meantime, Joan McWilliams had been pursuing dissolution of marriage proceedings in Colorado, and had hired a Colorado attorney. The divorce action was commenced in January, 1983, in Colorado and a decree was obtained in April, 1985. The Colorado attorney attempted to locate property hidden by George McWilliams but was unable to satisfactorily accomplish this task. In June, 1984, the Colorado attorney arranged for Joan McWilliams to be represented by her present Montana attorneys who filed a complaint on August 27, 1984, seeking to nullify the purported McWilliams/Langel transfer of Tracts A and B.

The court found that Joan McWilliams, having received $3,500 in support from George McWilliams ended up on welfare and she and her family sold all of her possessions including their clothes to survive.

Dee Ann Langel, the purported transferee under the deed, lost the house at a foreclosure sale in February, 1986. Joan McWilliams lacked funds to redeem the property in the amount of $7,000, and did not have the ability to pay the balance of the loan. Later, Dee Ann Langel made arrangements with the bank to repurchase the house.

Neither Thomas nor Dee Ann Langel ever dealt with Joan McWilliams concerning the property and she received no consideration from the transfer.

Jean Clems, a notary public, operates a typing and copying service and performs secretarial services for persons in need thereof. She did not charge fees for her services in

this transaction. George McWilliams was a customer and used her telephone answering service and other clerical services.

The Colorado petition for dissolution ended in a decree on April 23, 1985. The proceedings included a separation agreement dated October 15, 1984. Distributed by the terms of the agreement were the household items in the possession of each party, motor vehicles and certain debts incurred by Joan McWilliams in Ft. Collins, Colorado. The agreement provided for maintenance, child support and delinquent support. The parties then released all rights, including property rights and claims which each might have against each other. The four page agreement was said to include all of the agreements made between the parties. The complaint in the present action, filed by the Montana attorneys was filed on August 27, 1984. The agreement made no mention of this action.

Although George McWilliams has served as a third-party defendant in this action and was at one time represented by an attorney who later withdrew, he made no appearance personally or by counsel at the trial.

Based on those findings of fact, the District Court concluded and accordingly entered judgment, declaring that Joan McWilliams was entitled to an undivided one-half interest in and to Tracts A and B; that Jean Clem had negligently completed the certificate of acknowledgment on the deed and had violated her duties as a notary public by certifying that she had personally taken the acknowledgment of Joan McWilliams signature; that thereby Joan McWilliams suffered a cloud upon her title and lost the use of the property resulting in the sale of Tract A at a trustees sale; that she was forced to bring this action to set aside the conveyance and to clear her title and incurred attorney fees and costs of $17,000; that her equity in property as of

- 7 -

August 26, 1981, was $49,494; that Stan Tenney had no equitable or legal interest in Tract B of the property; that Dee Ann Langel had unjustly benefited from occupancy and use of the residence in question and should be jointly and severally liable with Jean Clem for the sum of $19,950; that George McWilliams was liable to the plaintiff for the full rental loss as damages; that the Colorado decree of dissolution was not a bar to this action; that Joan McWilliams was not barred by the statute of limitations, nor was she guilty of laches; that she was not barred in prosecuting her claim because she had dismissed as a defendant in this cause the bond insurer which on behalf of Jean Clem paid the sum of $1,000 to plaintiff; that Dee Ann Langel and Stan Tenney were not bona fide purchasers for value without notice because the August 26, 1981 deed was void as to Joan McWilliams; and that the statute, § 70-20-315, MCA, did not cure the defective acknowledgment in this case.

Dee Ann Langel and Stan Tenney have appealed the District Court's judgment as have Jean Clem, Clem's Word Processing Center and Clem's Placement Service.

The position of appellants, Dee Ann Langel and Stan Tenney on appeal is that the proximate cause of Joan's damages was the concurrent and joint conduct of the joint tortfeasors, the notary, Jean Clem, and the husband, George McWilliams. Except for such concurrent conduct, these appellants contend they would not have accepted a deed otherwise ordinary on its face. They contend that the deed should be valid as to Dee Ann Langel and to the extent that the deed is not validated, they should be indemnified by the guilty parties, Jean Clem and George McWilliams on the same basis as Langel and Tenney are liable to Joan McWilliams.

- 8 -

The position of Jean Clem on appeal (the other appellants named Clem are business entities utilized by Jean Clem) is that the judgment against Clem is improper because Joan McWilliams' signature on the deed was genuine; Clem recognized her signature and notarized it as she had done in the past "at plaintiff's request and approval;" that the mutual release and waiver clause in the settlement agreement in the dissolution proceedings in Colorado barred any further action on the matter; and that defendants Dee Ann Langel and Stan Tenney did not see the August 26, 1981 deed and did not rely on Clem's acknowledgment of plaintiff's signature in acquiring the property. Tangentially, Clem argues that Joan was negligent in signing the deed for her husband and that Joan's negligence is the sole proximate cause of her own damages and that the negligence of the notary public is not the proximate cause of Joan's damages.

The first problem for us to determine is the liability, if any, of the notary public in this case for the improper acknowledgment contained in the deed.

In Montana, a notary public is one of several officials authorized by law to take proof of the acknowledgment of an instrument. Section 1-5-101, MCA. By statute, the acknowledgment of an instrument must not be taken unless the officer taking it knows or has satisfactory evidence that the person making such acknowledgment is the individual described in and who executed the instrument. Section 1-5-201, MCA. The officer taking the acknowledgment must endorse on the instrument or attach thereto a certificate of acknowledgment substantially in the form prescribed by law. Sections 1-5-202, -203, MCA. The acknowledgment of a married person to an instrument purported to be executed by such person must be taken in the same manner as that of any other person, § 1-5-206, MCA, and the form of the certificate by a married

- 9 -

person must be substantially in the form prescribed for other individuals in § 1-5-203, MCA. Section 1-5-207, MCA.

A notary public must give an official bond in the sum of $5,000 ($1,000 at the time of this incident, § 1-5-405, MCA) and, for the official misconduct or neglect of a notary public, the notary and the sureties under the official bond are liable to the parties injured thereby for all damages sustained. Section 1-5-406, MCA.

Although an unrecorded instrument is valid as between the parties and those who have notice thereof, § 70-21-102, MCA, before a deed transferring real property can be recorded with the county clerk and recorder in a Montana county, its execution must be acknowledged by the person executing, and the acknowledgment must be certified by an official authorized to do so. Section 70-21-203, MCA.

Therefore, the statutory duty of the notary in taking an acknowledgment of an instrument is clear: he or she must know or have satisfactory evidence that the person making such acknowledgment is the individual who is described in and executed the instrument. A married person's acknowledgment to an instrument is to be taken the same as any other person. We agree with the Idaho Supreme Court as to the purpose of these statutes:

> We believe that the manifest intent of the legislature in requiring a notary public to execute a certificate of acknowledgment is to provide protection against the recording of false instruments. The sine qua non of this statutory requirement is the involvement of the notary, a public officer in a position of public trust. If the notary faithfully carries out his statutory duties, it makes little difference whether he remembers whether to fill in the blanks in the certificate. Similarly, if the notary conspires with the forger, or fails to require the personal appearance of the acknowledger, or is negligent in ascertaining the identity of the acknowledger, the

> statutory scheme is frustrated whether the form is completely filled in or not.

Farm Bureau Finance Company, Inc. v. Carney (Idaho 1980), 605 P.2d 509, 514.

The District Court in this case did not find the notary public was fraudulent in making the certificate of acknowledgment. Rather, it found that the notary was negligent. It makes little difference here. The statement of the notary in the certificate that Joan McWilliams had personally appeared before the notary to acknowledge the instrument was false. Based on the false certificate of acknowledgment by the notary, the deed was entitled to be accepted for recording. The ensuing transactions relating to the real property, including the change in the trust indenture by the mortgagee, the transfer to Tenney, and the subsequent transfer of a portion of the real estate interest to the pension fund all were the direct and proximate result of the false certificate of acknowledgment which led to the recording. The false certificate of acknowledgment was a proximate cause of those subsequent transactions. To hold otherwise would be to frustrate the very purpose of the statutes requiring such certificates.

True, Joan McWilliams may have been negligent in signing a blank deed for her husband. At most her negligence would be remote. It was the false certificate of acknowledgment of the notary which led to the recording of the deed and which gave the deed purported life for the subsequent transactions.

Two prior cases by this Court must be explained. In Mahoney v. Dixon (1904), 31 Mont. 107, 77 P. 519, Mahoney sued Dixon, a notary public, on the grounds that Dixon had falsely certified to the execution of a mortgage by a person who had not appeared before the notary and that Mahoney had lent $1,800 on the strength of the security under the

- 11 -

mortgage. The District Court instructed the jury that if the notary violated an express provision of the statute in the performance of an official act done by him as a notary public that he and his sureties were liable for the damage suffered by the plaintiff. The Montana Court reversed because the instruction did not tie the liability of the notary public to damages proximately caused by his official misconduct.

In Ellis v. Hale (1920), 58 Mont. 181, 194 P. 155, a similar situation occurred. Ellis, a real estate loan agent, had made a loan upon a mortgage. The acknowledgment of said instrument had been forged by a notary public. There the court held that an action against the sureties on the official bond of the notary could not succeed in the absence of evidence showing that the real estate agent loaned the money relying on the forged acknowledgment.

In this case, Clem relies on the Ellis and Mahoney cases as authority that recovery cannot be made against the notary public unless one relied on the false statements in the certificate. However, the factual bases for Ellis and Mahoney are completely different from this case. Joan McWilliams did not lose her property because she relied on a false certificate; rather, she was divested of her property by virtue of a false certificate. Ellis and Mahoney are not applicable here.

An issue raised by Clem, Langel and Tenney is whether the Colorado decree of dissolution is res judicata to this action. An action is barred by res judicata when the following criteria are met:

1) The parties or their privies are the same;

2) The subject matter of the action is the same;

3) The issues are the same, and relate to the same subject matter; and

4) The capacities of the persons are the same in reference to the subject matter and to the issues between them.

Fox v. 7L Bar Ranch Co. (1982), 198 Mont. 201, 206, 645 P.2d 929, 931.

Clearly, none of these factors are met in the instant action. The Colorado action had as parties Joan versus George McWilliams; this action has Joan versus Clem, Langel and Tenney. The subject matter of the Colorado action was a dissolution of marriage; this action is to collect damages for negligence and to set aside a void deed. The issues in the Colorado action were a determination of child support, maintenance and division of marital property (in which the house was not listed); the issues in this case are the duty and breach of duty of a notary public, and title to property in Bozeman, Montana. Since the parties, subject matter and issues are different in each action, the capacities of the parties in relation to those areas cannot be similar. The Colorado decree of dissolution is not a bar to the action in Montana for negligence, quiet title and loss of use of real property.

Joan's suit is not barred by the statute of limitations or laches. The negligent action occurred August 26, 1981, when the warranty deed was improperly notarized and transferred to Langel. The statute of limitations in an action for negligence is three years. Section 27-2-204(1), MCA. The statute of limitations begins to run when the cause of action accrues or when the negligence is discovered. Masse v. Dept. of Highways (1983), 204 Mont. 146, 151, 664 P.2d 890, 892. In this case Joan's complaint was filed August 27, 1984, three years and one day after the deed was improperly notarized. However, August 26, 1984, was a Sunday, so the final day for the action to be filed was

Monday, August 27. Sections 1-1-216(1)(a), 1-1-306 and 1-1-307, MCA. Further, Joan did not discover the existence of the void deed until August, or September, 1982, when a friend informed her the house had been sold. We hold that Joan filed her complaint within the time allowed for filing an action in negligence.

Laches is an equitable defense applicable when the complainant has delayed in the assertion of a right for such time as would now make assertion of the right inequitable. Hereford v. Hereford (1979), 183 Mont. 104, 108, 598 P.2d 600, 602. The record does not indicate Joan took unnecessary delay in asserting her right to her property. She was not aware the property was transferred until 1982, at which time she began searching for the documents necessary to her case. When she found the warranty deed, she immediately confronted both Clem and Langels with the forgery. As we noted above, her complaint in this action was filed within the applicable time for statute of limitations. We hold the doctrine of laches does not apply.

Appellants have also argued that § 70-20-315, MCA, Montana's curative statute for validation of unacknowledged deeds, validates the forged warranty deed. However, that statute applies to deeds executed by grantors and signed in due form, deeds which are otherwise valid except for the lack of an acknowledgment or other witness thereto. The statute is not intended to validate a void deed. As we have stated in the context of tax deeds, "a curative statute cannot breathe life and validity into . . . void . . . deeds." Lowery v. Garfield County (1949), 122 Mont. 571, 583, 208 P.2d 478, 485. Section 70-20-315, MCA, does not validate the August 26, 1981, warranty deed as to Joan since she, as one of the necessary grantors, never made the grant.

- 14 -

Clem's fifth issue is whether the payment of the $1,000 bond fully satisfies Joan for her damages against Clem. On or about October 25, 1984, Joan entered into an agreement with Reliance Insurance Company in which she released all her claims against the company upon its payment to her of a $1,000 penal bond. On November 14, 1984, Joan stipulated that all her claims against Reliance Insurance Company had been fully compromised and settled, and the District Court dismissed the company from the action with prejudice. Nothing in the agreement, stipulation or order evidences the intention to release or compromise Joan's claims against Clem. Reliance simply performed its bond contract and it does not appear that the release document "'is intended to release the other tortfeasors, or the payment is full compensation, or the release expressly so provides.'" Kussler v. Burlington Northern, Inc. (1980), 186 Mont. 82, 88, 606 P.2d 520, 524 (quoting Adams v. Dion (Ariz. 1973), 509 P.2d 201, 203). However, the $1,000 payment should be deducted from the total amount of damages owed by Clem to Joan. State ex rel. Deere & Co. v. District Court (Mont. 1986), 730 P.2d 396, 405, 43 St.Rep. 2270, 2279. We remand this issue to the District Court for an amendment to the findings of fact, conclusions of law, and judgment deducting $1,000 from the amount of damages for loss of use owed to Joan.

The next issue raised by defendants Langel and Tenney is whether the District Court erred in denying them relief under § 70-20-404, MCA. That statute states that the rights to real property of a purchaser in good faith and for value are not to be impaired when a conveyance of property is made with intent to defraud prior or subsequent purchasers or encumbrances. This is not the situation in this case. Here, the fraud was perpetrated by one grantor upon the other. The

deed was conveyed to Langel without the execution and acknowledgement of one of the married grantors, and therefore the deed is void as to her. Section 70-20-101 and -106, MCA. The District Court was correct in finding that § 70-20-404, MCA, was inapplicable to the facts of the case.

Another issue raised by Langel and Tenney is whether the District Court erred in failing to rule on their cross-claim for indemnification from Clem. The District Court concluded Dee Ann Langel had unjustly benefited from the occupancy and use of the Gallatin Gateway home, and that Langel was liable in the amount of $19,950, such liability being joint and several with Clem. Langel argues that since Clem was found negligent and she, Langel, was not found negligent, she should be fully indemnified by Clem.

In Consolidated Freightways Corp. v. Osier (1979), 185 Mont. 439, 447, 605 P.2d 1076, 1081, we defined "indemnity" as the principle which shifted "the entire loss from one party compelled to bear it to the shoulders of another who should bear it instead." In this instance, Joan was awarded $19,950 in damages for her loss of use of the house and property. Langel had the sole use of the house for over four years without paying Joan any consideration for her interest in it. Joan had a present interest in the house, since the purported transfer of her interest to the Langels was not valid. Langel and Tenney did possess the house and real estate and thus owe Joan for Joan's loss of use. We hold Langel and Tenney are not entitled to indemnification from Clem.

Finally, Langel and Tenney argue that it was error for the District Court to fail to grant them a default judgment against and indemnification from George McWilliams. George was not present at trial and his counsel had been given leave to withdraw from the case. However, he had been given notice

of the trial and had informed one of the attorneys of record that he did not plan to attend. At the opening of the trial and at a later hearing, the attorney for Langel and Tenney requested that a default judgment be entered against George in their favor. The motion was never ruled on by the District Court.

When an attorney is removed or ceases to act as such, the party to the action for whom the attorney was acting must, before any further proceedings are had against that party, be required by the adverse party, upon written notice, to appoint another attorney or appear in person. Section 37-61-405, MCA. The record does not show that George McWilliams was served with such a notice, and therefore the case against McWilliams is stayed by virtue of § 37-61-405, MCA. Judgment against him cannot be granted until the proper notice is served.

Remanded to the District court for amendment of the judgment as herein provided. As so amended, the judgment is affirmed.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_L. C. Gulbrandson_,

_William E. Hunt_

_A. C. McGrory_
Justices