775 P.2d 1065

CITY CONSUMER SERVICES, INC., a
New Jersey corporation,
Plaintiff/Appellant,

v.

Harold METCALF and Jean H. Metcalf,
husband and wife,
Defendants/Appellees.

Jane VICKERS, an unmarried woman,
Plaintiff/Appellee,

v.

Harold METCALF and Jean H. Metcalf,
husband and wife,
Defendants/Appellants.

No. CV–88–0332–PR.

Supreme Court of Arizona,
En Banc.

June 6, 1989.

**2**

Whitehill, West, Christoffel & Zickerman, P.C. by Dean C. Christoffel, Tucson, for City Consumer Services.

Richards & Eisenstein by Barbara E. Fisher, Tucson, for Jane Vickers.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Tom Slutes, Tucson, for Harold & Jean H. Metcalf.

FELDMAN, Vice Chief Justice.

We granted review believing the court of appeals misapplied the law regarding the liability of a notary public for negligent notarization of a forged deed. *See* Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction under A.R.S. § 12–2101(B).

### FACTS

Bruce and Jane Vickers acquired their house as joint tenants with right of survivorship in April 1975. Bruce and attorney Harold Metcalf (Metcalf) had offices in the same building. On October 16, 1981, Bruce went to Metcalf's office with a woman he introduced as his wife. Bruce presented Metcalf with a quit claim deed purporting to transfer Jane's interest in the family residence to Bruce. The deed was dated and already bore Jane's supposed signature when Bruce presented it for Metcalf's notarization.

Metcalf did not ask if the woman had signed the deed, did not request identification from her, and did not obtain an acknowledgment of her signature. Based

---

1. Presumably $10,000 made City whole. It had loaned $60,000 and by foreclosure obtained

only on Bruce's representation that the woman was his wife, Metcalf changed the date on the quit claim deed and notarized it. The woman was not Bruce's wife, and the signature on the deed was forged.

Bruce then went to City Consumer Services (City) and negotiated a loan, using his apparent sole interest in the property as collateral. The house appraised at $100,000, less a mortgage balance of $20,000. On the basis of the $80,000 equity, City loaned Bruce $60,000 and took a deed of trust on the house as security. The real Jane Vickers was unaware of Bruce's actions. She never approved the loan nor did she see any of the proceeds.

The Vickers were divorced on September 12, 1984. The dissolution decree awarded Jane, still blissfully unaware of Bruce's machinations, what she thought was full ownership of the residence. Bruce never repaid City's loan and his whereabouts are unknown. City then attempted to foreclose the deed of trust. Jane filed suit and eventually enjoined City's attempt to sell the entire property. At the trustee's sale on December 23, 1986, therefore, City sold only what would have been Bruce's to encumber if there had been no divorce decree: an undivided one-half interest in the property. City was the sole bidder and bought Bruce's interest for $50,000, one-half the appraised value of the whole property.

City and Jane both asserted claims against Metcalf for negligently notarizing the quit claim deed. The jury awarded City $10,000 [1] and Jane $50,000 "to repurchase the balance of the house from City Consumer Services, Inc." Verdict, filed February 25, 1987. Presumably, the $50,000 compensated Jane for Bruce's one-half interest, awarded Jane in the divorce proceedings, that City eventually obtained on foreclosure.

Metcalf appealed these verdicts. The court of appeals upheld the $10,000 award to City. *City Consumer Services v. Metcalf,* No. 2 CA–CV 87–0263 and 2 CA–CV 88–0045 (consolidated) (Ct.App. May 26,

property worth $50,000.

1988) (memorandum decision). However, the court of appeals reversed the $50,000 award to Jane, reasoning that "the one-half interest was lost due to Bruce's conduct and not the negligence of Metcalf. Accordingly, Jane has suffered no compensable damage." *Id.* at 3.

## ISSUES PRESENTED

1. Did the court of appeals correctly hold that Metcalf's negligent notarization did not damage Jane?

2. Was there evidence that Metcalf was negligent?

## DISCUSSION

### A. Causation and Damage

■ The court of appeals reasoned that because Bruce could have independently encumbered his one-half interest in the joint tenancy with Jane, Metcalf's negligent notarization caused her no injury. In other words, Jane lost what Bruce alone had the ability to take from her. This conclusion is logically appealing but pragmatically incorrect. Even assuming Bruce had the legal *power* to encumber his one-half interest in the joint tenancy, *see Brant v. Hargrove*, 129 Ariz. 475, 632 P.2d 978 (Ct.App.1981), there was evidence he did not have the *ability* absent Metcalf's negligent notarization. The testimony indicates that lending institutions, including City, have longstanding policies against lending money on undivided interests in joint tenancies.

William E. Thomlinson, a foreclosure administrator for City, testified he would not have loaned Bruce money on his one-half interest.

A When you're saying if he came to me with the joint tenancy deed and said: I want to borrow money on my one-half, I would not because it's simply not com-

pany policy. We could never make a loan on a specific property unless all the people who were [in title were] all there, so we wouldn't enter into the transaction.

Q Why is that company policy?

A It gets extremely involved when you have to—at least when you create a loan, you have to know how you're going to get the money back and you have to know that everything is in line should this eventuality come about, and in that case it would be extremely complicated.

I know in Arizona that community property, et cetera, et cetera, and we would not do that and it would be against policy.

Q Would you have given the loan if Jane had signed for the loan as well?

A Yes.

Reporter's Transcript (RT), vol. I, at 143.

In addition, Charles P. Jorgenson, Vice President of Great American First Savings, testified that if someone came to him with a one-half interest in a home on a joint tenancy deed, he would not make the loan. His company has

a very strict policy. Any names appearing on the deed must sign the lien instrument.

It's like taking a half interest on any kind of a second mortgage loan. It's just inviting legal problems that we're just not interested in.

Q Would that have been your answer at your previous position before you came to Great American?

A Yes, ma'am.

Q Would that have been your answer in your previous experience as a lending officer in all of your positions?

A Yes, ma'am.

RT, vol. II, at 6.[2] Thus, the record supports the jury's implicit finding that Bruce

---

2. Lending institutions have good reason to require the signatures of all joint tenants because of ambiguities in Arizona real property law. Arizona adheres to the lien theory of mortgages. A.R.S. § 33–703; *Lane Title & Trust Co. v. Brannan,* 103 Ariz. 272, 440 P.2d 105 (1968); *Brant,* 129 Ariz. at 480, 632 P.2d at 983 (deed of trust, although technically granting legal title to trust-

ee, does not grant more than a lien on the property). A split of authority exists in lien theory jurisdictions on whether severance of the joint tenancy occurs when one joint tenant mortgages his undivided interest. *See* R. CUNNINGHAM, W. STOEBUCK, & D. WHITMAN, THE LAW OF PROPERTY 209 (1984). Some cases hold there is no severance of the joint

would not have succeeded in encumbering his undivided joint tenancy interest without Metcalf's notarization on the forged deed. But for Metcalf's notarization, Bruce would not have been able to encumber his interest in the property to City. Because of City's encumbrance, Jane failed to obtain Bruce's interest, subsequently awarded to her on divorce. Metcalf's act was a cause in fact of Jane's damage. PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 264–66 (5th ed.1984) (hereafter PROSSER & KEETON).

Metcalf argues that even if he had refused to notarize, leaving Bruce unable to borrow from a "respectable" lender, Bruce could have borrowed from a "hard money man" or some other species of private lender who, for the appropriate rate of interest, "might" have made a loan in some amount without the signature of a joint tenant. RT, vol. II, at 29. This may be true, as it also may be true that Bruce might have found another way, besides forgery, to "cash out" of the family home. However, we will never know what might have happened if Metcalf had refused to notarize the forged signature. We only know what did happen because he notarized the signature. Whether it would have happened anyway is a matter "peculiarly" for the jury, and the jury here decided this against Metcalf. PROSSER AND KEETON, supra, at 269–70 (ordinarily, "no one can say with absolute certainty what would have occurred if the defendant had acted otherwise").

B. Negligence

■ Metcalf claims his conduct was not negligent. Notaries public must conform their conduct to a defined statutory duty of care. See A.R.S. §§ 33–503 et seq. This statute requires, first, that the person whose signature is being acknowledged have "appeared" before the notary and "acknowledged he executed the instrument." A.R.S. § 33–503(1). It also requires that the notary either have "known" the person whose signature is being acknowledged "or that the [notary have] satisfactory evidence that the person acknowledging was the person described in and who executed the instrument." A.R.S. § 33–503(2) (emphasis added).

■ Metcalf arguably violated both requirements of the statute. First, he did not require "Jane" to acknowledge the signature that was already on the deed. RT, vol. I, at 119. Cf. Immerman v. Ostertag, 83 N.J.Super. 364, 199 A.2d 869 (1964) (notary's acknowledgment of signature signed in his presence held non-negligent); see also A.R.S. § 33–505(1) and (2).

Second, Metcalf violated the second requirement of the statute. The person introduced as "Jane" was unknown to Metcalf. Therefore, under A.R.S. § 33–503(2), Metcalf was required to have "satisfactory evidence" that the person acknowledging the signature was the person who had executed the instrument. The only "evidence" Metcalf possessed was Bruce's introduction of a stranger whom Bruce claimed was his wife. Metcalf argues that this alone, as a matter of law, was "satisfactory evidence." We do not agree, especially given the facts of this case.

Metcalf and Bruce were not social or business friends. They occupied office suites in the same building and on one occasion Metcalf had done legal work for Bruce. Nevertheless, Metcalf described Bruce as only a "casual acquaintance." Metcalf was aware the deed was dated as of a day prior to that on which Bruce and "Jane" appeared in his office, and he changed the date to reflect the date on which they appeared for notarization. See RT, vol. I, at 117–18. Nevertheless, Metcalf did not bother to ask the purported

---

tenancy estate when a joint tenant executes a mortgage. E.g., Hammond v. McArthur, 30 Cal.2d 512, 183 P.2d 1 (1947). Because the joint tenancy continues, the mortgagor's interest terminates if he dies before the other joint tenant. In such cases, the mortgagee's interest in the property also terminates. See D.A.D., Inc. v.

Moring, 218 So.2d 451 (Fla.App.1969). The converse of this rule is that the mortgage will encumber the entire property if the mortgagor/joint tenant succeeds to a greater interest in the property because of the prior death of the other joint tenant.

wife for either identification or an acknowledgment of her signature. *Id.* at 119.

Under these circumstances, substantial grounds existed for the jury to find that Metcalf did not meet his statutory duty as a notary. We cannot say, as a matter of law, that Bruce's introduction, alone, was "satisfactory evidence" that the "other woman" was Jane. *See Transamerica Title Insurance Co. v. Green*, 11 Cal.App.3d 693, 89 Cal.Rptr. 915 (1970).

 Metcalf argues that the verdict is unsupported because the three notaries he called testified, in effect, that Metcalf conducted himself as a reasonable notary public.. In his view, the opinion evidence from the notaries is binding on the jury. We disagree. Metcalf has not asserted that the notary testimony he presented pertained to subjects beyond the common knowledge of an ordinary juror. Thus, the jury was free to give this testimony whatever weight it thought best. *See State v. Ganster*, 102 Ariz. 490, 493, 433 P.2d 620, 623 (1967) (credibility and weight to be given expert or opinion testimony is a jury question). Even expert testimony is not binding when common experience provides a basis for a contrary view. *See* M. UDALL & J. LIVERMORE, ARIZONA PRACTICE: THE LAW OF EVIDENCE § 25, at 44–45 (2d ed.1982).

 Indeed, even if Metcalf's actions here conformed to the custom of Arizona notaries public, the jury could still find his actions negligent. *See Rossell v. Volkswagen of America*, 147 Ariz. 160, 709 P.2d 517 (1985) (citing *The T.J. Hooper*, 60 F.2d 737 (2d Cir.), *cert. denied sub nom., Eastern Transport Co. v. Northern Barge Corp.*, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932) (even though radios for ocean tugs were not customary, it might be negligent not to have one)).

## CONCLUSION

The record supports the jury's conclusion that Metcalf was negligent in executing the certificate of acknowledgment required by A.R.S. §§ 33–503 and –505.

The record also supports the jury's conclusion that Metcalf's negligence damaged Jane. Although Bruce had the legal right to encumber his one-half interest in the property, evidence existed that he could not without Metcalf's acknowledgment on the deed. Absent Metcalf's negligence, which enabled Bruce to perpetrate the fraud on City, Bruce and Jane might have continued to hold in joint tenancy until their divorce, which resulted in the award of Bruce's interest to Jane. The issue was for the jury.

We vacate the court of appeals' decision and affirm the judgment.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.