423 S.E.2d 875

**William E. GALLOWAY, Plaintiff,**

v.

**Rose Ann CINELLO, Defendant.**

**No. 21226.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 8, 1992.

Decided Oct. 23, 1992.

William E. Galloway, pro se.
Rose Ann Cinello, pro se.

MILLER, Justice:

This case comes before us through a certified question from the Circuit Court of Brooke County pursuant to W.Va.Code, 58–5–2 (1967),[1] and Rule 13 of the West Virginia Rules of Appellate Procedure.[2] We are asked to decide whether an attorney may be held liable to the beneficiary of a deed of trust where the attorney acted as the notary and as the trustee of the deed of trust. In the case at bar, this dual role resulted in the underlying debt losing its secured status in bankruptcy court.[3]

## I.

The petitioner, William Galloway, is an attorney at law. On January 3, 1990, Clarence and Heddy Rochinich, husband and wife, and the respondent, Rose Ann Cinello, hired Mr. Galloway to prepare a deed, a promissory note, and a deed of trust in order to consummate the sale of real property. Ms. Cinello wanted to sell the Rochinichs a residence in Weirton for $22,000. The Rochinichs made a downpayment of $1,500, and the balance, which was owner-financed by Ms. Cinello, was to be repaid in

---

**1.** W.Va.Code, 58–5–2, provides, in pertinent part:

"Any question arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, in any case within the appellate jurisdiction of the supreme court of appeals, may, in the discretion of the circuit court in which it arises, and shall, on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back."

**2.** Rule 13 of the Appellate Rules outlines the steps to follow when presenting a certified question.

**3.** The certified question reads as follows:

"Where an attorney at law serves as a draftsman, a notary public, and a trustee of a subsequently recorded deed, of a promissory note, and a subsequently recorded deed of trust in an owner/seller financed real estate transaction between two private citizens to which transaction the attorney at law is not a party, does the owner/seller have a cause of action against said attorney at law for not perfecting a lien in favor of the owner/seller on the subject real estate because the said attorney at law served both as the trustee and notary public in the said deed of trust?"

installments pursuant to a promissory note. The promissory note was secured by a deed of trust on the real property. The deed of trust was a first lien on the property, and Ms. Cinello was, therefore, a secured creditor.

The deed, promissory note, and deed of trust were signed on April 25, 1990. In the deed of trust, Mr. Galloway was named as the trustee and Ms. Cinello as the beneficiary. Mr. Galloway notarized both the deed and the deed of trust. On May 7, 1990, the deed and deed of trust were recorded in the office of the Clerk of the County Commission of Brooke County.

On December 3, 1990, the Rochinichs filed a Chapter Seven bankruptcy petition in the United States Bankruptcy Court for the Northern District of West Virginia. The assets listed in the Rochinichs' bankruptcy petition included the property they had purchased from Ms. Cinello. The Rochinichs also listed Ms. Cinello as a secured creditor to whom they owed approximately $19,000.

On April 15, 1991, the bankruptcy trustee filed a complaint in the bankruptcy court[4] alleging that Ms. Cinello did not have a perfected lien on the real estate because Mr. Galloway, as the trustee in the deed of trust, had also acknowledged the signatures of the Rochinichs.[5] The Rochinichs filed an answer to the complaint admitting the authenticity of the deed of trust and asserting that they wanted to reaffirm the debt.

By order entered November 14, 1991, the bankruptcy court ruled that Ms. Cinello had no security interest in the property. The principal legal authority relied upon by the bankruptcy court was *Tavenner v. Barrett*, 21 W.Va. 656 (1883), where we invalidated a deed of trust because its trustee had also notarized the instrument. Ms. Cinello appealed this decision to the United States District Court. Mr. Galloway then filed a petition for declaratory judgment in the Circuit Court of Brooke County. In addition, Mr. Galloway and Ms. Cinello filed a joint motion requesting the circuit court to certify the question to this Court. The circuit court granted the motion.

## II.

■ An acknowledgment is a formal declaration before an authorized public official, i.e., a notary public, by a person who has executed an instrument that the instrument is his free act or deed.[6] *See generally* 1A C.J.S. *Acknowledgments* § 2 (1985); 1 Am.Jur.2d *Acknowledgments* § 1 (1962 & Supp.1992). An acknowledgment has three functions: to authenticate the instrument; to permit the instrument to be introduced into evidence without proof of execution; and to entitle the instrument to be recorded. *See generally* 1 Am.Jur.2d *Acknowledgments* at § 4. An acknowledgment is a prerequisite to recording an instrument in this State. *See* W.Va.Code, 39-1-2 (1933).[7]

As earlier noted, the bankruptcy court relied on *Tavenner v. Barrett, supra,* where we held that the acknowledgment of the deed of trust by the trustee made the

---

**4.** *This procedure is authorized in 11 U.S.C. § 544 (1988).*

**5.** A certificate of acknowledgment is a document signed by "a notary public, justice of the peace, or other authorized officer, attached to a deed, mortgage, or other instrument, setting forth that the parties thereto personally appeared before him on such a date and acknowledged the instrument to be their free and voluntary act and deed. A verification of the act of the maker of the instrument." *Black's Law Dictionary* 226 (6th ed. 1990). The procedure for taking an acknowledgment is provided for in W.Va.Code, 39-1A-3. *See* note 11, *infra.*

**6.** An acknowledgment differs from a verification because an acknowledgment authenticates

the instrument by showing it was the act of the person executing it, while a verification is a sworn statement as to the truth of the facts stated within the instrument. 1A C.J.S. *Acknowledgments* § 2 (1985).

**7.** W.Va.Code, 39-1-2, provides, in pertinent part: "The clerk of the county court of any county in which any deed, contract, power of attorney, or other writing is to be, or may be, recorded, shall admit the same to record in his office, as to any person whose name is signed thereto, when it shall have been acknowledged by him, or proved by two witnesses as to him, before such clerk of the county court."

deed of trust invalid. In *Tavenner,* we followed the rationale advanced by other courts that an acknowledgment is a quasi-judicial act, and, as a consequence, " '[t]he objection to the trustee taking such acknowledgment is analogous to the one forbidding a judge to pass upon his own case. Though this act may not be strictly judicial, it is of a judicial nature and requires disinterested fidelity.' " 21 W.Va. at 688, *quoting Stevens v. Hampton,* 46 Mo. 404, 407 (1870).[8]

Several cases follow *Tavenner,* but provide no analysis of its rule. For example, in *Central Trust Co. v. Cook,* 111 W.Va. 637, 163 S.E. 60 (1932), which involved another acknowledgment of a deed of trust by the trustee-notary, we merely cited *Tavenner* and concluded in Syllabus Point 2: "An acknowledgment of a trust deed by the grantors before the trustee as a notary public is invalid."

Similarly, in *Dixon v. Hesper Coal & Coke Co.,* 100 W.Va. 422, 130 S.E. 663 (1925), a mortgage company had its deed of trust declared invalid because the trustee acknowledged the instrument. Again, there was only a brief reference to *Tavenner.*

In some jurisdictions, courts have focused on the notary's interest and have held that if the notary has a financial or beneficial interest in the transaction other than receipt of the ordinary notarial fee, the instrument is invalid. *See Loucks v. Carl Foster & Wards Used Cars,* 334 F.2d 86 (6th Cir.1964); *Southern Iron & Equip. Co. v. Voyles,* 138 Ga. 258, 75 S.E. 248 (1912); *Logue v. Von Almen,* 379 Ill. 208, 40 N.E.2d 73 (1941); *Bartlett v. Bolte,* 193 Iowa 1063, 188 N.W. 814 (1922); *Pearl v. Interstate Secs. Co.,* 357 Mo. 160, 206 S.W.2d 975 (1947); *Musselshell Valley Farming & Livestock Co. v. Cooley,* 86 Mont. 276, 283 P. 213 (1929); *Loyal's Auto Exch., Inc. v. Munch,* 153 Neb. 628, 45 N.W.2d 913 (1951); *Armstrong v. Jonas,* 204 N.C. 153, 167 S.E. 562 (1933); *Phillips v. Brazosport Sav. & Loan Ass'n,* 366 S.W.2d 929 (Tex.1963), *appeal dismissed,* 375 U.S. 438, 84 S.Ct. 506, 11 L.Ed.2d 471 (1964); *First Nat'l Bank v. Citizens' State Bank,* 11 Wyo. 32, 70 P. 726 (1902). *See generally* 1 Am.Jur.2d *Acknowledgments* § 16; 1A C.J.S. *Acknowledgments* § 40.

The analysis in these cases is somewhat different than in *Tavenner,* but the same result is generally achieved, i.e., voiding the instrument. Typical of the reasoning of this approach is the principle articulated · in *Loucks v. Carl Foster & Wards Used Cars,* 334 F.2d at 88, where the court quoted from 1 Am.Jur.2d *Acknowledgments* § 16 at 458:

" '[A]n officer or a person otherwise legally authorized to take acknowledgments is not qualified to act where he has a financial or beneficial interest in the proceedings or will acquire such an interest under the instrument to be acknowledged.

"Frequently it is said that this rule rests upon grounds of *public policy,* the purpose being to close the door to temptation to fraud.' " (Emphasis added in *Loucks* ).

The rule regarding the disqualifying interest of a notary is presently contained in our Uniform Notary Act, which the legislature adopted in 1984.[9] *See generally*

---

8. *Tavenner* did hold, however, that the deed of trust would be valid between the parties *inter se* and to subsequent parties with actual notice: "The deed however is good between the parties, (being sui juris) and should prevail against subsequent deeds to those who had actual notice of its existence." 21 W.Va. at 688. (Citations omitted).

From a practical standpoint, this language provides little protection for the parties to the deed of trust if either the disqualified notary or one of the parties to the transaction has obtained an undue advantage over or has otherwise harmed the other party.

9. *See* 1984 W.Va. Acts ch. 136. Our statute, W.Va.Code, 29C–1–101, provides: "This chapter shall be known and may be cited as the 'uniform notary act,'" However, our act is not identical to the national model as revealed by this statement from the statutory notes on the Uniform Law on Notarial Acts: "West Virginia. Has adopted a 'Uniform Notary Act' (Code 29C–1–101 to 29C–9–101) which contains some provisions similar to those of the uniform act and having to some extent the same general purpose, but which does not constitute a substantial adoption of the major provisions thereof." 14 Uniform Laws Annotated 126 (1990).

W.Va.Code, 29C–1–101, *et seq.* The particular language regarding disqualification is contained in W.Va.Code, 29C–3–102 (1985):

"(a) A notary public who has a disqualifying interest, as hereinafter defined, in a transaction may not legally perform any notarial act in connection with the transaction.

"(b) For the purposes of this chapter, a notary public has a disqualifying interest in a transaction in connection with which notarial services are requested if he:

"(1) May receive directly, and as a proximate result of the notarization, any advantage, right, title, interest, cash or property, exceeding in value the sum of any fee properly received in accordance with section three hundred one [§ 29C–4–301], article four of this chapter, or exceeding his regular compensation and benefits as an employee whose duties include performing notarial acts for and in behalf of his employer; or

"(2) Is named, individually, as a party to the transaction."

■ While this section states that a notary with a disqualifying interest "may not legally perform any notarial act in connection with the transaction," it does not address the validity of a document acknowledged before a notary with a disqualifying interest. No provision in the Act deals with this question.

■ The first step in any analysis of this issue is to determine whether the notary has a disqualifying interest. Here, there is no disagreement that the notary had a disqualifying interest because he was a party to the deed of trust that he notarized. We addressed the interests of the parties in a deed of trust in *Lilly v. Duke*, 180 W.Va. 228, 231, 376 S.E.2d 122, 125 (1988):

"[T]he beneficiary of a deed of trust enjoys a protectible interest in the property subject to the trust. We have recognized the substantial property interests involved in a deed of trust—the trustee holding legal title for the beneficiary and the grantor holding an equitable title. *Rollyson v. Bourn*, 85 W.Va. 15, 100 S.E. 682 (1919)."

Where the notary has a disqualifying interest, the next question is the bearing this defect has on the validity of the instrument. We decline to follow the *per se* rule of *Tavenner* and its progeny, which automatically voids a deed of trust because the trustee has acted as its notary. Such a rule can be unduly harsh, as illustrated by the facts of this case. The beneficiary of the deed of trust loses her security interest not because of any claim of wrongdoing, bad faith, or other improper conduct on her part, but solely on the basis that the notary was the trustee on the document.

If the primary purpose of the rule is to shield the parties from potential wrongdoing or fraud, then the focus of the inquiry should be shifted in this direction. Other jurisdictions have recognized the harshness of a *per se* rule, as evidenced by this summary from 1 Am.Jur.2d *Acknowledgments* § 16 at 458–59:

"To hold that every interest renders the act ipso facto void is repugnant to sound principles of the law of evidence and in many cases must be productive of great hardship and injury. A more salutary rule declares that where there is no imputation or charge of improper conduct, bad faith, or undue advantage, the mere fact that the acknowledgment was taken before an interested officer will not vitiate the ceremony or render it void if it is otherwise free from objection or criticism. The fact of interest, however, ought to be regarded with suspicion and should provoke vigilance to detect the presence of unfair dealing, the slightest appearance of which the party seeking to uphold the acknowledgment should be required to clear away." (Footnote omitted).

*See generally Davis v. Hale*, 114 Ark. 426, 170 S.W. 99 (1914); *Bartlett v. Bolte, supra; J.W. Dillon & Son Co. v. Oliver*, 106 S.C. 410, 91 S.E. 304 (1917); *Weidman v. Templeton*, 61 S.W. 102 (Tenn.Ch.App. 1900); *Haile v. Holtzclaw*, 400 S.W.2d 603 (Tex.Civ.App.1966), *rev'd on other grounds*, 414 S.W.2d 916 (Tex.1967).

■ Accordingly, we hold that a notary's disqualifying interest can result in voiding

an instrument that has been notarized by him. In deciding whether to void the instrument, a court should consider whether an improper benefit was obtained by the notary or any party to the instrument, as well as whether any harm flowed from the transaction. To the extent that *Tavenner v. Barrett, supra,* and related cases state or imply the contrary, they are overruled.

Inasmuch as our statute forbids a notary with a disqualifying interest in an instrument to acknowledge it, we believe it is appropriate to place the burden of proof on the notary or any party supporting the instrument to uphold its validity. This rule is analogous to the principle we explained in *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 929, 253 S.E.2d 528, 530 (1979):

"A corollary to the fiduciary principle is the rule that a presumption of fraud arises where the fiduciary is shown to have obtained any benefit from the fiduciary relationship, as stated in 37 Am. Jur.2d *Fraud and Deceit* § 441:

"'... if he seeks to support the transaction, he must assume the burden of proof that he has taken no advantage of his influence or knowledge and that the arrangement is fair and conscientious[.]'"

*See also Yaromey v. King,* 182 W.Va. 126, 386 S.E.2d 493 (1989); *Work v. Rogerson,* 152 W.Va. 169, 160 S.E.2d 159 (1968).

■ Thus, we conclude that once it is shown that a notary has a disqualifying interest in an instrument which he acknowledged, and a suggestion of actual prejudice, unfair dealing, or undue advantage is raised by an adverse party, then the burden shifts to the notary or any party seeking to support the challenged document to demonstrate that no improper benefit was obtained and no harm occurred as a result of the disqualified act.

### III.

Ms. Cinello lost the benefit of being a secured creditor on the deed of trust in the

bankruptcy proceeding because the bankruptcy court relied on our substantive law in *Tavenner.* Consequently, we must address whether the trustee-notary can be held liable to Ms. Cinello, the beneficiary of the deed of trust in this case, because the deed has been rendered ineffective.[10]

Should the federal district court uphold the bankruptcy court's ruling, Ms. Cinello will suffer a harm through the notary's action. Even though the trustee-notary did not gain any improper advantage, his failure to properly follow *Tavenner* resulted in the invalidation of the deed of trust by the bankruptcy court. Thus, Ms. Cinello's status as a secured creditor under the deed of trust will have been destroyed. Her secured interest of some $19,000 will have been lost, and she will share only with the common creditors.

■ Our Uniform Notary Act addresses a notary's liability. W.Va.Code, 29C–6–101 (1985), states: "A notary public is liable to the persons involved for all damages proximately caused by the notary's official misconduct." "The term 'official misconduct' means the wrongful exercise of a power or the wrongful performance of a duty. The term 'wrongful' as used in the definition of official misconduct means unauthorized, unlawful, abusive, negligent, reckless or injurious." W.Va.Code, 29C–6–201. The term "proximately caused" used in W.Va. Code, 29C–6–101, is further refined in Section 103: "It is not essential to a recovery of damages that a notary's official misconduct be the only proximate cause of the damages."

In other jurisdictions, even in the absence of any specific statutory language, courts have held a notary and his official surety civilly liable for negligence in the performance of notarial duties. The most frequent cases are those where the notary has acknowledged a deed or other instrument without ensuring that the person whose signature he acknowledged was in

---

**10.** Based on the record in this case, and in light of our foregoing law, had this matter originated in the Circuit Court of Brooke County, we would have answered this question in the nega-

tive because there was no improper benefit or harm occurring from the disqualified act originally.

fact the person he or she was represented to be.

For example, in *City Consumer Services, Inc. v. Metcalf*, 161 Ariz. 1, 775 P.2d 1065 (1989), the defendant went to the office of an attorney-notary with a woman he represented to be his wife. The defendant presented the notary with a quit claim deed purporting to transfer his wife's interest in the couple's family residence exclusively to him. The deed was dated and already bore his wife's supposed signature. Based only on the defendant's representation that the woman accompanying him was his wife, the notary notarized the deed. Subsequently, City Consumer Services loaned money to the defendant on the ground that he had complete title to the property. Upon his default, the company tried to sell the property under its deed of trust, but discovered that the defendant had title to only a one-half interest. The lender then sued the notary for its losses and received a judgment. The Arizona Supreme Court affirmed:

> "Metcalf claims his conduct was not negligent. Notaries public must conform their conduct to a defined statutory duty of care. *See* A.R.S. §§ 33–503 et seq. This statute requires, first, that the person whose signature is being acknowledged have 'appeared' before the notary and 'acknowledged he executed the instrument.' A.R.S. § 33–503(1). It also requires that the notary either have 'known' the person whose signature is being acknowledged 'or that the [notary have] *satisfactory evidence* that the person acknowledging was the person described in and who executed the instrument.' A.R.S. § 33–503(2) (emphasis added)." 161 Ariz. at 4, 775 P.2d at 1068.[11]

*See also Bernd v. Fong Eu*, 100 Cal.App.3d 511, 161 Cal.Rptr. 58 (1979); *Osborn v.*

*Ahrens*, 116 Idaho 14, 773 P.2d 282 (1989); *Webb v. Pioneer Bank & Trust Co.*, 530 So.2d 115 (La.App.1988); *McWilliams v. Clem*, 228 Mont. 297, 743 P.2d 577 (1987); *Keck v. Keck*, 54 Ohio App.2d 128, 375 N.E.2d 1256 (1977); *Meyers v. Meyers*, 81 Wash.2d 533, 503 P.2d 59 (1972).

■ We have found only one case in our jurisdiction, *Henderson v. Smith*, 26 W.Va. 829 (1885), where a notary was sued. There the notary had taken a defective acknowledgment from a married woman. As a result, the beneficial owner of a deed of trust lost his lien. The acknowledgment had been prepared by an attorney, and the notary handled its execution. We held the notary had not acted corruptly or maliciously and was, therefore, not liable.

The standard of conduct is no longer limited to corrupt or malicious acts on the part of a notary. It has been strengthened by our Uniform Notary Act, under which negligence will suffice to create liability. To this extent, *Henderson* has been superseded by statute.

Having in mind that our Uniform Notary Act prohibits a notary with a disqualifying interest from acknowledging an instrument, and inasmuch as the notary in this case is an attorney, we conclude that he was negligent in making the acknowledgment. Moreover, under *Tavenner* and its related cases, it should have been apparent that this defect would void the instrument if it were challenged, which is exactly what occurred in the bankruptcy court. Thus, the notary's negligent act proximately caused Ms. Cinello to lose her status as a secured creditor.

## IV.

In summary, while we have altered our law under *Tavenner*, we decline to give it any effect in this case, as the loss has already occurred. Accordingly, the certi-

---

11. We have similar requirements for taking an acknowledgment, as set out in W.Va.Code, 39–1A–3:

> "The person taking an acknowledgment shall certify that:
>
> "(1) The person acknowledging appeared before him and acknowledged he executed the instrument; and

> "(2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence *that the person acknowledging was the person described in and who executed the instrument.*"

fied question is answered in the affirmative, and Ms. Cinello does have a cause of action should the federal district court affirm the bankruptcy court's ruling.

The certified question having been answered, this case is dismissed.

Answered and dismissed.